Henry Martinez PORTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 68336.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 21, 1981.

Rehearing Denied Nov. 25, 1981.

John M. Anderson, Fort Worth, J. Douglas Tinker, Corpus Christi, on appeal only, for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall, Rufus Adcock and Joe C. Lockhart, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of capital murder. The punishment is death. The appellant had been previously tried and convicted for the same offense but the judgment was reversed and cause remanded in *Porter v. State*, 578 S.W.2d 742 (Tex.Cr.App.1979). The case was retried in Nueces County after the venue was changed from Tarrant County.

The appellant asserts that the trial court erred in the following ways: by overruling his challenge to the array of the jury panel, by excusing improperly for cause several prospective jurors, by not ordering a psychiatric examination of the appellant, by not allowing the appellant's expert to examine the weapons that were introduced in evidence, by admitting an oral statement of the appellant made while he was in custody, by admitting in evidence a tape recording of police communications, and by allowing in evidence testimony concerning an extraneous offense.

The appellant in his first five grounds of error complains that the trial court erred in overruling his challenge to the array of the jury panel and in refusing to issue attachments for those who had been summoned but had not reported for jury duty.

The appellant filed a written challenge to the array pursuant to Art. 35.07, V.A.C.C.P. alleging that "jurors have been excused by individuals not authorized by law to excuse them such as deputy clerks and other law enforcement officers." A hearing was held and the appellant presented the testimony of Charles Nay. Nay testified that he was the court administrator and that he had for the court issued the summons for the jury. He stated that in each of the two groups summoned not all of the summoned jurors had appeared. He said some had legal excuses but a large number did not respond at all to the summons. Nay stated that he did not know whether or not someone who was not authorized by law had excused these jurors. However, he added that more than likely the ones not appearing had moved out of the county. The appellant, after the hearing, requested that each juror who had not responded be attached. The request was denied and appellant's challenge to the array was overruled.

We conclude that the trial court did not err in its rulings. Art. 35.07, supra, states:

"Each party may challenge the array only on the ground that the officer summoning the jury has wilfully summoned jurors with a view to securing a conviction or an acquittal. All such challenges must be in writing setting forth distinctly the grounds of such challenge. When made by the defendant, it must be supported by his affidavit or the affidavit of any credible person. When such challenge is made, the judge shall hear evidence and decide without delay whether or not the challenge shall be sustained."

The evidence presented by the appellant fails to show that a person unauthorized by law excused the prospective jurors or that a person "wilfully summoned jurors with a view to securing a conviction or an acquittal." The evidence only shows that several prospective jurors did not respond to the summons; nothing indicates that someone improperly excused them. See *Dent v. State*, 504 S.W.2d 455 (Tex.Cr.App.1974).

The trial court did not err in not attaching the jurors. Art. 35.01, V.A.C.C.P., which provides for the attachment of absent jurors, is directory and not mandatory. *Moreno v. State*, 587 S.W.2d 405 (Tex.Cr.App. 1979); *Dent v. State*, supra. The appellant has failed to establish that an injury occurred by the trial court's failure to grant his request for attachments. *Moreno v. State*, supra; *Dent v. State*, supra; *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr.App. 1980). No abuse of discretion has been shown; appellant's grounds of error are overruled.

█ In his next eighteen grounds of error the appellant contends that the trial court improperly excused for cause six jurors. The first juror, Susan Pace Herndon, was improperly excused, the appellant argues, because the following exchange from the final question asked the juror shows that under the holding of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) she was qualified to serve:

"Q. Despite the convictions that you have, can you put those aside, if you were on this jury, and do your duty as a citizen? Despite what your personal convictions may be, could you set those aside and serve, and do your duty as a juror in a capital murder case?

"A. Yes, I could do my duty as a juror."

However, Herndon previously testified that she had a long standing belief against the death penalty, that she could never impose it, and that she would vote automatically against the imposition of the death penalty no matter what the evidence at trial revealed. When asked by defense counsel if there was any way he could get her to agree that there are some cases where she thought the death penalty was a possibility, she responded there was not.

The entire voir dire examination of Susan Herndon was quite short and when taken as a whole makes it unmistakably clear her views "would prevent or substantially impair the performance of [her] duties as a juror in accordance with [her] instructions and [her] oaths and would prevent [her] from consider[ing] and decid[ing] the facts impartially and conscientiously apply[ing] the law as charged by the court." *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Witherspoon v. Illinois*, supra. The appellant apparently argues that the final response by the juror that she could do her duty as a juror demonstrates that she was qualified to serve as a juror under *Witherspoon*. Indeed the appellant makes the same argument concerning the other excused veniremen; however, the argument is without merit. The question was very broad and provided little, if any, insight into her ability to serve as a juror. Nothing in the juror's response indicates that she was willing to follow the trial court's instructions and base her decision upon the evidence presented. The final question and answer were not sufficient to rehabilitate the juror and overcome her earlier testimony that she would automatically vote against the imposition of the death penalty regardless of the facts and circumstances that might emerge during the trial. *Vigneault v. State*, 600 S.W.2d 318 (Tex.Cr. App.1980). Appellant's reliance upon *Burns v. Estelle*, 592 F.2d 1297 (5th Cir. 1979) aff'd 626 F.2d 396 (5th Cir. 1980) is misplaced. In *Burns* a prospective juror stated three times she was opposed to the death penalty and its possible infliction would affect her deliberations. She was excused for cause and she was asked no further questions. The court vacated judgment, stating that the juror was not disqualified under *Witherspoon* and that other questions should have been propounded to the juror. This is clearly not the case with this venireman. She had earnestly stated her opposition to the death penalty and she would automatically vote against it. The juror was properly excused for cause. *Witherspoon v. Illinois*, supra; *Vigneault v. State*, supra; *Ex parte Chambers*, 612 S.W.2d 572 (Tex.Cr. App.1981); *Sanne v. State*, 609 S.W.2d 762 (Tex.Cr.App.1980); *Russell v. State*, 598 S.W.2d 238 (Tex.Cr.App.1980) cert. denied, 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300.

■ The appellant also complains that venireman Zeon Martinez, Jr. was improperly excused for cause. Martinez when questioned during the voir dire examination stated he did not have any objection when told the punishment for capital murder was either life or death. However, when asked if he could assess the death penalty he stated that he could not. He stated that it was a strong belief and when asked if he would vote against the death penalty regardless of the facts he said yes. The prosecutor then explained the special issue questions under Art. 37.071, V.A.C.C.P. that the jury would have to answer. The juror stated he would automatically vote "No" to the questions because he would not want to sentence a man to death regardless of the facts and evidence. When asked on cross-examination if he could set aside his beliefs and do his duty as a citizen serving on this jury, Martinez said no. When asked how it would affect his deliberations Martinez stated that he had never killed anyone, that it would be on his conscience, and that he would worry about it when deciding the case.

The appellant argues that Martinez was qualified under *Witherspoon* and that the trial court excused him under V.T.C.A. Penal Code, Sec. 12.31(b) in violation of the holding in *Adams v. Texas*, supra. The contention is without merit. The juror repeatedly stated he would vote against the death penalty regardless of the evidence presented and further stated he could not set aside his beliefs if he served on the jury. The juror was properly excused; no error has been shown. *Vigneault v. State*, supra; *Ex parte Chambers*, supra; *Sanne v. State*, supra. Compare *Grijalva v. State*, 614 S.W.2d 420 (Tex.Cr.App.1981).

The appellant next asserts that venireman Alonzo Vaughn was excused in violation of the principles of *Witherspoon*. Mr. Vaughn testified that he had a long-standing belief against the death penalty. He stated several times that he would always vote against the death penalty regardless of the facts.

The appellant argues that despite these statements Vaughn was improperly excused because he qualified his feelings by saying, "You know, what I'm saying, that is my feeling. I would not vote for the death penalty, is my feelings *now*." Additionally the appellant relies upon the following testimony:

"Q. And could you set aside right now and later to the evidence and honestly answer whatever questions you are required to answer?

"A. I'm willing to listen to the evidence to see what—it could be different, I don't know. But, my feeling now, as it stands now—

＊ ＊ ＊ ＊ ＊ ＊

"Q. Could you listen to the evidence in the case, and do your duty as a citizen; despite the feeling you have about the death penalty? What you do is going to depend on the evidence; is that right?

"A. Yeah, I imagine so. It would—if I'm understanding you right."

When re-examined by the State, the process of reaching a verdict through the special issue questions under Art. 37.071, supra, was again explained to the juror. He then stated he would automatically vote "No" to the special issues.

Venireman Vaughn's testimony is unmistakeably clear that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him. The appellant's contention is devoid of merit. *Lockett v. Ohio*, supra; *Vigneault v. State*, supra; *Ex parte Chambers*, supra; *Sanne v. State*, supra.

■ The appellant asserts that Esiquio Cantu and Beth Prue were improperly excused. Initially, we note that the appellant at trial failed to base his objections to the excusing of the jurors upon *Witherspoon* grounds. Only general objections were made, nothing is presented for review. *May v. State*, 618 S.W.2d 333 (Tex.Cr.App. 1981). Nonetheless we have examined the voir dire of these jurors and agree that they

were properly excused. Mr. Cantu stated that he did not believe in the death penalty, that he could never impose it regardless of the facts, and that he would always vote against it, regardless of the facts and circumstances presented during the trial. Mrs. Prue stated that she also did not believe in capital punishment, that she would vote against it regardless of the evidence presented and would vote "No" to the special issue questions to avoid imposing the death penalty. The two veniremen were properly excused. *Lockett v. Ohio,* supra; *Vigneault v. State,* supra; *Ex parte Chambers,* supra; *Sanne v. State,* supra.

■ The appellant in his final complaint about the excused prospective jurors argues that Joyce Rice was qualified under *Witherspoon* and should not have been excused. Again the appellant failed to make a specific objection when Mrs. Rice was excused and nothing is presented for review. *May v. State,* supra. We nonetheless have reviewed the voir dire examination of Mrs. Rice. While her testimony is not as definite as the previously discussed veniremen it is sufficient to show that Mrs. Rice was properly excused for cause. During direct examination she stated she was not opposed to the death penalty but could not live with herself if she participated in returning a death penalty. When asked if she would exclude the death penalty regardless of what the facts revealed she said, "I would assume, yes." She later added that she would answer "No" to the special issue questions because of what a "Yes" answer would do to her. On cross-examination the juror stated she believed in the death penalty but did not want to do it herself. She indicated she could set aside her reluctance and determine guilt or innocence. However, when asked if she could set aside this reluctance and "do your duty as a citizen and make whatever decision based upon the evidence before you that the law might require" she said she did not know. On redirect the following occurred:

"Q. . . .[C]an you sit in judgment in this case . . . and assume the full responsibility of a juror and be fair to both sides as to the facts and the punishment and take that oath of office.

"A. No.

\* \* \* \* \* \*

"Q. . . .[W]ould you vote against the death penalty as a juror in a capital murder case, regardless of the facts and circumstances that might emerge during the trial of the case?

"A. Yes, sir.

"Q. And, as you sit here right now, are you irrevocably committed at this time to vote against the death penalty, regardless of the facts and circumstances that might emerge during the trial?

"A. Yes, sir."

This testimony of the venireman made it clear that she could not be trusted to abide by existing law or follow conscientiously the instructions of the trial judge. *Lockett v. Ohio,* supra; *Vigneault v. State,* supra; *Ex parte Chambers,* supra; *Sanne v. State,* supra. No error has been shown.

■ The appellant in four grounds of error contends that the trial court erred in not ordering a psychiatric examination of the appellant after the court became aware that the appellant had had psychiatric problems in the past. After the selection of the jurors but prior to the offer of any evidence before them, the prosecution notified the trial court and defense counsel that they had found a document concerned with the appellant in their files. The document was described as an incomplete report and it was neither signed nor dated. Under the heading "Social History" it stated that the appellant was sent to a hospital in Austin and that he escaped. Under the heading "Military History" the document stated that the appellant was sent to the State Hospital at Austin from the Waterville State School for Boys because appellant had hallucinations of seeing his father. It stated that appellant later ran away from the hospital. This document does not appear in the record before us.

The day after the State informed defense counsel about the document, appellant's attorney requested that the trial court appoint a psychiatrist to examine the appellant and determine his competency to stand trial. He, however, conditioned his request upon an agreement that the results of the examination would not be used during the punishment phase of the trial. The trial court refused to agree and the appellant withdrew his motion.

The appellant first argues that the trial court erred in not granting his motion that the results of any psychiatric examination for competency not be used in the punishment phase. This Court in the past has ruled that no error occurred when an accused was examined by a psychiatrist to determine competency but later testified as to the accused's future dangerousness at the punishment stage of the trial. *Hammett v. State*, 578 S.W.2d 699 (Tex.Cr.App. 1979), petition for cert. withdrawn 448 U.S. 725, 100 S.Ct. 2905, 65 L.Ed.2d 1086; *Gholson v. State*, 542 S.W.2d 395 (Tex.Cr.App. 1976), cert. denied 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084; *Livingston v. State*, 542 S.W.2d 655 (Tex.Cr.App.1976), cert. denied 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250. These decisions occurred before the recent Supreme Court opinion in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) and their continuing viability may be questioned. However, we do not need to reach that issue in order to make a proper disposition of the matter before us. Here, no psychiatric testimony from a competency examination was admitted during the punishment phase of the trial. Thus the only question raised is whether the trial court erred in not ordering a psychiatric examination of the appellant.

Art. 46.02, Sec. 3(a), V.A.C.C.P. provides, as follows:

"At any time the issue of the defendant's incompetency to stand trial is raised, the court may, on its own motion or motion by the defendant, his counsel, or the prosecuting attorney, appoint disinterested experts experienced and qualified in mental health or mental retardation to examine the defendant with regard to his competency to stand trial and to testify at any trial or hearing on this issue."

The issue of a defendant's incompetency to stand trial is raised if "the court determines there is evidence to support a finding of incompetency to stand trial." Art. 46.02, Sec. 2(a), supra. In *Sisco v. State*, 599 S.W.2d 607 (Tex.Cr.App.1980) we stated:

"We are, therefore, constrained to hold that, in determining after hearing held in advance of a trial on the merits whether 'there is evidence to support a finding of incompetency to stand trial,' the trial court is to assay just that evidence tending to show incompetency, putting aside all competing indications of competency, to find whether there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency."

In the case before us the only evidence that pertains to the appellant's incompetency to stand trial is a report that was undated, unsigned, and of unknown origin. The behavior mentioned in the report apparently occurred when the appellant was a boy or a young man; the appellant was thirty-seven years old at the time of the trial. The behavior in the report does not give any indication that the appellant did not have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against him." No other evidence concerning the appellant's competency was presented and appellant's behavior throughout the trial was not such as to raise any issue of his incompetency. The appellant did not request a hearing on incompetency. There was simply no evidence whatsoever offered which dealt with the appellant's present incompetency to stand trial. We conclude that the trial court did not abuse its discretion in not ordering a psychiatric examination of the appellant. *Sisco v. State*, supra. Compare *Stiehl v. State*, 585 S.W.2d 716 (Tex.Cr.App.1979) cert. denied 449 U.S.

1114, 101 S.Ct. 926, 66 L.Ed.2d 843; *Bowens v. State*, 507 S.W.2d 785 (Tex.Cr.App. 1974); *Hill v. State*, 429 S.W.2d 481 (Tex. Cr.App.1968) cert. denied 393 U.S. 955, 89 S.Ct. 384, 21 L.Ed.2d 367.

The appellant also complains that the prosecution should have revealed the information contained in the document prior to the selection of the jury. Compare *Ex parte Lewis*, 587 S.W.2d 697 (Tex.Cr.App. 1979). However, the record reveals that the prosecution informed the appellant about the document as soon as they became aware of it. No error is shown.

The appellant in his next two grounds of error contends that the trial court erred in not allowing the appellant's own expert to examine the weapons introduced in evidence and in not granting a postponement of the trial to allow time for his expert to examine the weapons.

■ In a motion in limine the appellant prior to trial requested the opportunity to have his own expert examine and run tests on the weapons involved in the case. The trial court at a pretrial proceeding told the appellant he could run the tests "if he wants to." Later that day the appellant requested that the trial be postponed or delayed in order for his expert to conduct the examinations and tests. The court denied the request for the continuance noting, "You can do it during the trial if you want to, but I'm not going to delay the trial to do it." The following day, the appellant informed the court that the expert he intended to use was unable to make the tests. Appellant stated he was trying to contact another particular expert. Another request for postponement was denied. Less than a week later while the jury was being selected, the trial court, at the request of the State, asked about the status of the appellant's expert. Appellant's counsel stated that he had not contacted the expert. The defense at trial did not present the testimony of an expert witness.

The appellant contends that his request to allow an expert to examine the evidence was denied and thus is violation of Art. 39.14, V.A.C.C.P. See *Terrell v. State*, 521 S.W.2d 618 (Tex.Cr.App.1975); *Detmering v. State*, 481 S.W.2d 863 (Tex.Cr.App.1972). However, a review of the record, as already outlined makes it clear that the trial court did in fact grant appellant's request. This contention is without merit.

Appellant further argues that it was error not to grant his request for a postponement. Art. 29.03, V.A.C.C.P. provides as follows:

"A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown: which cause shall be fully set forth in the motion. A continuance may be only for as long as is necessary."

Art. 29.08, V.A.C.C.P. states:

"All motions for continuance on the part of the defendant must be sworn to by himself."

Appellant's motion was neither in writing nor was it sworn to; nothing is presented for review. *Minx v. State*, 615 S.W.2d 748 (Tex.Cr.App.1981); *Allen v. State*, 505 S.W.2d 923 (Tex.Cr.App.1974).

■ Additionally we note that the appellant did not perfect the record by filing a timely motion for new trial with an affidavit from an expert witness or by showing under oath what the testimony would have been. *Minx v. State*, supra. The grounds of error are overruled.

■ The appellant next contends that his oral statement while in custody to a police officer was improperly admitted in evidence. Officer Clinton Hathorne testified that on December 1, 1975, he and other peace officers went to an apartment located in San Antonio to execute an arrest warrant for the appellant. After entering the apartment the officers found the appellant, placed him under arrest, and informed him of his rights. Officer Hathorne stated that after this was completed he saw three sealed envelopes in plain view on a table. One was addressed to the editor of the San Antonio News, another to the editor of the San Antonio Light, and the last to Harry Nass, Attorney at Law. Hathorne asked the appellant if the letters belonged to him

and appellant replied that they were his. He added that they contained his confession to a murder and would clear his brother-in-law of any involvement in the murder of the Fort Worth policeman. Appellant argues that his oral statements were inadmissible under Art. 38.22, V.A.C.C.P.

Art. 38.22(1)(e), supra, then in effect stated the following:

"The oral or written confession of a defendant made while the defendant was in jail or other place of confinement or in the custody of an officer shall be admissible if:

"* * *

"(e) It be made orally and the defendant makes a statement of facts and circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument which he states the offense was committed."

Appellant contends that his statements did not lead to the discovery of evidence tending to establish his guilt. See *Scott v. State*, 564 S.W.2d 759 (Tex.Cr.App.1978); *Smith v. State*, 514 S.W.2d 749 (Tex.Cr.App. 1974). Compare *Ashley v. State*, 362 S.W.2d 847 (Tex.Cr.App.1962) cert. denied 372 U.S. 956, 83 S.Ct. 955, 10 L.Ed.2d 10; *Chase v. State*, 508 S.W.2d 605 (Tex.Cr.App. 1974) cert. denied 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68.

The contention is without merit. A review of the record reveals that the same information contained in the oral statement was obtained from other sources. Officer Cole, a Fort Worth policeman, testified that Officer Hathorne gave him the three envelopes. Cole obtained oral and written consent from the appellant to open and examine the letters. Each envelope contained the same letter, which appeared to be in the same handwriting and each was signed Henry Martinez Porter. The letter read as follows:

"S. A. News, To Whom It May Concern: This is my confession to the death of the Fort Worth Police Officer which no one else was involved in but myself. I have read in the newspapers that the police are trying involving my former brother-in-law because his car that I had was in his name. However, my brother-in-law had nothing to do with the death or anything else that I have done. I had bought the car from him about four months ago and since I hadn't yet finished paying for the car, the title was still in his name. However, the car was mine and belonged to me and its responsibility lies with me. I haven't seen my brother-in-law for four months and I wish to make this clear. So, any statements by any of these persons trying to involve anyone else for my wrongdoings are false. This is my true statement. Signed, Henry M. Porter. Three copies have been made by me, one each to the news media and one to Mr. Nash, Attorney, who has been my former brother-in-law's attorney."

Additionally the appellant introduced in evidence the statement he made to Officer Cole on the day following his arrest. It stated in part:

"Last night when I was arrested I had three letters that I had written. I told one of the San Antonio Officers that the letters were about the Fort Worth Policeman being shot and that they showed that Eddie Rodriquez did not have anything to do with shooting the Policeman.

"Tonight I have signed a consent that was read and explained to me by Det. Cole saying that I did not object to him opening the letters."

The appellant's confession in the letters and his written statement contain the same information that appeared in his oral statement. The admission of that statement does not present reversible error. *Brantley v. State*, 522 S.W.2d 519 (Tex.Cr.App.1975); *Gutierrez v. State*, 502 S.W.2d 746 (Tex.Cr. App.1973).

■ In his next ground of error the appellant asserts that a tape recording and a transcript of the tape were improperly admitted in evidence. The tape had recorded the radio transmissions of the police on the day Officer Mailloux, the deceased, was shot.

Sergeant R. D. Burchfield testified that radio communications of the Fort Worth Police Department were continuously recorded twenty-four hours a day. The recording admitted in evidence was a portion of that tape. He stated that he had care, custody, and control of the tape and that the tape was prepared in the ordinary course of business of the police department. Burchfield further testified that it was in the ordinary course of business for an employee or officer to have personal knowledge of the transmissions and broadcasts recorded on the tape. He added that the entries on the tape were made contemporaneously with the events they described. He stated that he was not present when the recordings were made, but that no changes in the tape had been made. Thomas Johnson testified that he was a civilian dispatcher for the police and was working on the day of the shooting. He said that the recording was accurate and that no alterations had been made to it. He added that he could identify all the voices on the tape, either by recognizing the sound of their voices or by their call number. The portion of tape about which the appellant complains is as follows:

"(08:39:46) (YOUNG) '350—Do you know—or did they leave you a note on the console—about that car wanted on the armed robbery at Almers Grocery on Hemphill? Do you know if it was picked up last night or not?'

"(08:40:01) (DISPATCHER) 'I have nothing on it 350. No notes, no nothing.'

"(08:40:04) (YOUNG) '10–4.'

"(08:40:28) (MAILLOUX) '351 to headquarters. Do you want the year, color, and make car that suspect's driving?'

"(08:40:36) (DISPATCHER) 'I think we found one here. Channel C had it on a 36, 3723 Hemphill. Red pickup with a camper.'

"(08:40:46) (MAILLOUX) 'No. This one is on that Mexican male that has been hitting us all over town. He was seen yesterday in a white '66 Ford Edward Sam Davis 695.'

"(08:40:58) (DISPATCHER) 'Edward Sam David 695?'

"(08:41:02) (MAILLOUX) '351–10–4. Spotted it at Hemphill and Magnolia, supposed to be that same one—that hit, I believe it was 2628 Hemphill last week.'

"(08:41:13) (DISPATCHER) 'Okay. I don't know whether they got that one or not.'"

The following portion of the tape was also admitted:

"(08:56:06) (MAILLOUX) '351—Edward Sam David 695 36 Suspect turning north on Lipscomb off West Rosedale.'

"(08:56:13) (DISPATCHER) 'Lipscomb and West Rosedale.'

"(08:56:14) (MAILLOUX) 'Correction. He's still going on west. Had his turn indicator signal on.'

"(08:56:28) (DISPATCHER) 'Any unit around Lipscomb and Rosedale get with 351 on this 36 suspect.'

"(08:56:35) (MAILLOUX) 'He's turning north on College.'

"(08:56:37) (DISPATCHER) 'Northbound on College now.'

"(08:56:42) (YOUNG) '350—Be careful about going around (unintelligible).'

"(08:56:46) (MAILLOUX) '10–4.'

"(08:56:52) (YOUNG) '350—Any unit that can get with 351 over there, that suspect is armed I suspect.'

"(08:56:58) (MORTON) '359—I'm headed that way, what's his 20 now?'

"(08:57:02) (DISPATCHER) 'Last seen northbound on College from about Rosedale.'

"(08:57:04) (MAILLOUX) 'He's southbound on College. He's turning back. Correction I think he's going to pull over.'

"(08:57:16) (DISPATCHER) '359, your 20?'

"(08:47:18) (MORTON) '359—I'm southbound on Rosedale. What hundred block of College is he in?'

"(08:57:23) (MAILLOUX) '351—1200 College.'

"(08:57:24) (DISPATCHER) '1200 College.'

"(08:57:27) (MORTON) 'I'm on my way.'

"(08:57:49) (UNIDENTIFIED UNIT) 'Did he say 1100 College?'

"(08:57:52) (DISPATCHER) '1200.'

"(08:58:08) (DISPATCHER) '353?'

"(08:58:11) (WALLACE) '353—Go ahead.'

"(08:58:12) (DISPATCHER) 'Go over to Jennings and Pennsylvania, Jennings and Pennsylvania with Unit 149.'

"(08:58:19) (WALLACE) '353—10—4. Same sheet.'

"(08:58:22) (MALONE) '355—I've got an officer shot here, send some help!'"

The appellant did not at trial and does not now on appeal complain that the proper predicate, as required under *Edwards v. State*, 551 S.W.2d 731 (Tex.Cr.App.1977), was not established for the admission of a sound recording. Rather appellant contends that the statements on the tape were hearsay and their admission denied him his right to confrontation and prejudiced his defense.

We do not agree with the appellant's contentions. The Business Record Act, Art. 3737e, V.A.C.S., is a codification of the business record exception to the hearsay rule. It provides that a business record is admissible as evidence of an event if (1) it was made in the regular course of business, (2) it was the regular course of that business for an employee of that business with personal knowledge of the event to make a record, and (3) it was made at or near the time of the event. The tape was admissible as a business record as an exception to the hearsay rule. Officer Burchfield testified that the recording was made in the regular course of business, that it was the regular course of the police department for an employee of the police with personal knowledge of the event to make the recording, and the recording was made at the same time as the events recorded. The appellant argues that Officer Burchfield did not have personal knowledge of the acts and events preserved on the sound recording. However, Section 2 of the Business Records Act states in part:

"The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved by the testimony of the entrant, custodian, or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record."

Officer Burchfield testified he was the custodian of the sound recording; the appellant's contention is without merit. A proper predicate for the admission of the tape recording as a business record was established.

The appellant further argues that even if the proper predicate had been laid for the admission of the tape under Art. 3737e, supra, the tape nonetheless should not have been admitted in evidence. He contends that the tape does not have "the indicia of reliability to insure the integrity of the fact-finding process commensurates with the constitutional right of confrontation and cross-examination." *McCrary v. State*, 604 S.W.2d 113 (Tex.Cr.App.1980); *Sisson v. State*, 561 S.W.2d 197 (Tex.Cr.App.1978); *Battee v. State*, 543 S.W.2d 91 (Tex.Cr.App. 1976); *Coulter v. State*, 494 S.W.2d 876 (Tex.Cr.App.1973). We have stated that even though the formal requirements for admissibility of a business record may be shown, the business record should not be automatically admitted in evidence. The fundamental trustworthiness of the record must be evident. *Coulter v. State*, supra.

However, in the case at bar the fundamental trustworthiness of the recording cannot be questioned. In our holdings in *McCrary, Sisson, Battee,* and *Coulter* the business records admitted in evidence were without a doubt prepared in anticipation of prosecution. The tape recording in the instant case was not made with a specific view toward prosecution in mind. As a matter of fact it is a rare situation in which such a recording would provide any probative value to a case. The sound recording allowed the police department to review the procedures used by their officers and to insure that information transmitted was accurately recorded. The appellant does not complain that the tape was inaccurate nor is there any indication in the record that it

is inaccurate. We, therefore, conclude that the sound recording was of such trustworthiness as to guarantee the same protection provided by the rights of confrontation and cross-examination. *Burleson v. State*, 585 S.W.2d 711 (Tex.Cr.App.1979); *United States v. Verlin*, 466 F.Supp. 155 (N.D.Tex. 1979).

■■■■ The appellant apparently also argues that the statements contained on the tape are hearsay upon hearsay. He contends that while the tape may be admissible under Art. 3737e, supra, statements appearing on tape are themselves hearsay and not admissible. See *Smith v. Riviere*, 248 S.W.2d 526 (Tex.Civ.App.—Texarkana 1951), no writ history. However, we initially note that the appellant's objection to the admission of the tape was based upon the tape itself being hearsay. The appellant, even though he was given a chance to review the recording before its admission, failed to make a specific objection that certain statements on the tape were based upon further hearsay. The appellant failed to bring to the court's attention which statements he believed to be additional hearsay and should be excised from the remainder of the tape recording. Nonetheless we have reviewed the statements recorded on the tape and conclude that they are not hearsay.

It is well established that an extra-judicial statement or writing offered for the purpose of showing what was said rather than for the truth of the matter stated therein does not constitute hearsay. *Nixon v. State*, 587 S.W.2d 709 (Tex.Cr.App.1979); *Norton v. State*, 564 S.W.2d 714 (Tex.Cr. App.1978); *Gholson v. State*, 542 S.W.2d 395 (Tex.Cr.App.1976) cert. denied 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084. Compare *Elder v. State*, 614 S.W.2d 136 (Tex.Cr. App.1981). The communications between the police officers and the dispatcher were not offered for the truth of the matter stated. It was offered to show the circumstances surrounding and leading to the shooting. See *Nixon v. State*, supra; V.T. C.A. Penal Code, Sec. 19.06. Additionally, the statements were offered to show that

the officer was "acting in the lawful discharge of an official duty." V.T.C.A. Penal Code, Sec. 19.03(a)(1). Finally, the broadcasts of deceased as he was attempting to stop the automobile were admissible as res gestae statements. *Trostle v. State*, 588 S.W.2d 925 (Tex.Cr.App.1979); *Corbett v. State*, 493 S.W.2d 940 (Tex.Cr.App.1973) cert. denied 414 U.S. 1131, 94 S.Ct. 871, 38 L.Ed.2d 756. The sound recording was properly admitted in evidence; the appellant's ground of error is overruled.

In the appellant's remaining ground of error he asserts that it was error to allow in evidence testimony about an extraneous offense. At trial Susan Chandler testified that on November 18, 1975, the appellant robbed her at gunpoint. During the robbery the appellant knocked her unconscious. The court instructed the jury that it could consider the evidence of extraneous offense only for the purpose of determining the intent and motive of appellant. The appellant offered no objection to the instruction.

■■■ This Court has repeatedly stressed that an accused shall not be tried for some collateral crime or for being a criminal generally. *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). This as a general rule evidence of extraneous offenses is inadmissible; however, several exceptions to the general rule exists. *Yarbrough v. State*, 617 S.W.2d 221 (Tex.Cr.App.1981). Evidence of an extraneous offense which shows an accused's motive or intent is admissible if it is material and its relevancy to a material issue outweighs its prejudicial potential. *Yarbrough v. State*, supra; *Albrecht v. State*, supra.

Appellant argues that since it is not necessary to establish motive in order to sustain a conviction for murder, *Garcia v. State*, 495 S.W.2d 257 (Tex.Cr.App.1973), evidence of an extraneous offense showing motive should not be admitted. However, this ignores that evidence of motive is one kind of evidence aiding in establishing proof of an alleged offense. *Rodriquez v. State*, 486 S.W.2d 355 (Tex.Cr.App.1972). Thus the prosecution may always offer evidence to show motive for the commission of an

offense because it is relevant as a circumstance to prove the commission of the offense. Of course, the testimony must fairly tend to raise an inference in favor of the existence of a motive on the part of the accused to commit the alleged offense. *Rodriquez v. State,* supra.

■ The evidence in this case reveals the commission of the offense of armed robbery by the appellant eleven days prior to the shooting. It is apparent that the evidence of the extraneous offense creates an inference that the appellant's motive in shooting the deceased was to avoid apprehension. The trial court did not err; the evidence was admissible for the purpose of showing motive. *Barefoot v. State,* 596 S.W.2d 875 (Tex.Cr.App.1980); *Hughes v. State,* 563 S.W.2d 581 (Tex.Cr.App.1978) cert. denied 440 U.S. 950, 99 S.Ct. 1432, 59 L.Ed.2d 640; *Yarbrough v. State,* supra; *Russell v. State,* 598 S.W.2d 238 (Tex.Cr. App.1980). The ground of error is overruled.

The judgment is affirmed.

CLINTON, J., not participating.

TEAGUE, J., dissents. See dissenting opinion in *Williams v. State,* 622 S.W.2d 116 (Tex.Cr.App.1981).