COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 COURTNEY
 MARIE CHEEK,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-02-00453-CR
  
 Appeal from the
  
 385th District Court
  
 of Midland County, Texas
  
 (TC#CR27429)
 
 




 

O
P I N I O N

A jury convicted Courtney Marie Cheek
of knowingly or intentionally causing bodily injury to her fourteen-month-old
daughter, Alixandra.  The court sentenced
her to ten years in prison, suspended for ten years.  On appeal, Cheek raises three points of error
concerning a videotaped interview of her other daughter, three-year-old
Britiny.  Finding no error, we affirm.

Factual and Procedural Background








At trial, Cheek claimed that her
boyfriend, David Prater, was responsible for Alixandra=s injuries.  She testified that when she woke up on
October 27, 2001, she found that Alixandra had gotten into her makeup and had
covered herself in lipstick Afrom head to toe.@ 
Cheek decided to walk to a neighbor=s house to ask if the neighbor could
babysit that night.  She left Alixandra
and Britiny with Prater, who said that he would wipe the lipstick off of
Alixandra.  After Cheek left, the only
people in the house were Prater, Alixandra, and Britiny.  Cheek testified that when she returned, she
noticed that the lipstick had been wiped off, but that Alixandra=s Acheeks were reddened [a]nd she looked
like she had been squeezed.@  Cheek asked Prater
what had happened, and he said that Alixandra would not hold still while he was
trying to clean her face.  He squeezed
Cheek=s face really hard to demonstrate
what he had done to Alixandra.  Prater
left the house about five or ten minutes later.

After the red marks on Alixandra=s face began to turn to bruises,
Cheek called the sheriff=s office.  Some
deputies arrived and escorted Cheek and Alixandra to a hospital.   At the hospital, Cheek met Sergeant Terry
Cowin of the Midland County Sheriff=s Office.   She told him that Prater caused Alixandra=s injuries.  Two days later, she gave Cowin a written
statement in which she again claimed that Prater caused the injuries.








In December, Cheek gave Cowin an oral
statement, admitting that she caused Alixandra=s injuries.  In January, she gave Cowin a written
statement in which she admitted that after Prater left the house, she Alost [her] cool@ with Alixandra while cleaning the
lipstick off of her face.  She stated
that she held Alixandra=s face too hard and knocked her down to the floor.  Cheek testified at trial that her December
and January statements were not true. 
She claimed that Cowin promised her that if she confessed she would only
be charged with a misdemeanor, she would not have to spend any time in jail,
and she would be able to keep her children. 
Cowin denied making any promises or threats to obtain Cheek=s confession.

Prater admitted that he watched the
children while Cheek went to the neighbor=s house.  But he testified that he did not wipe the
lipstick off of Alixandra=s face, he did not cause her injuries, and she was not
injured when he left the house.

On October 29, 2001, the same day
that Cheek made her written statement blaming Prater for Alixandra=s injuries and two days after those
injuries occurred, Cowin took Cheek and Britiny to the Children=s Advocacy Center.  A forensic interviewer employed by the Center
conducted a videotaped interview with Britiny. 
In the interview, Britiny indicated that Prater caused Alixandra=s injuries.  Cowin did not mention the videotaped
interview in his reports.  At trial, he
claimed that he Aflat forgot about it.@








On the Friday before trial was to
begin, Cheek=s counsel learned about the videotape
through discussions with her client.[1]  At the commencement of trial the following
Monday morning, defense counsel asked for a continuance to allow her to procure
and view the tape and to make additional trial preparations based on the
tape.   The trial court delayed the voir
dire until the afternoon and the commencement of testimony until the next
morning.  Later in the day, defense
counsel filed a written motion seeking either a dismissal or a ten-day
continuance because of the State=s failure to disclose the
videotape.  The court denied the motion,
but recessed court at 2 p.m. the next day to allow the defense some time to
research issues raised by the videotape.

Because the defense indicated it
might call Britiny as a witness, the judge interviewed her in the presence of
the prosecutor and defense counsel to determine whether she was competent to
testify.  The judge determined that she
was competent and that the defense could call her as a witness if it desired to
do so.  But the judge announced in open
court, outside the presence of the jury, that Britiny unequivocally told him
two or three times that her mother was responsible for Alixandra=s injuries.  The prosecutor had stated earlier that
according to CPS, Britiny told two other people that Cheek caused Alixandra=s injuries.

The next morning, defense counsel
announced that she would not call Britiny as a witness.  She asserted, however, that the videotape
should be admitted.  Counsel argued that
the tape was admissible as a business record pursuant to Rule 803(6) of the
Texas Rules of Evidence, that it was admissible as an extension of section
104.002 of the Texas Family Code and article 38.071 of the Texas Code of
Criminal Procedure, and that Cheek would be denied due process if the tape were
not admitted.  Nevertheless, the court
refused to admit the videotape.








The videotape is included in the
record as part of the defense=s bill of exceptions.  
The bill of exceptions also includes the testimony of Cowin and the
forensic interviewer regarding the circumstances under which the interview was
conducted and the videotape was made.[2]

Inadmissibility of Videotaped
Interview

In her first and second points of
error, Cheek asserts that the trial court erred by refusing to admit the
videotaped interview of Britiny.  While
acknowledging that the tape is hearsay, she argues that it was admissible under
the business records exception to the hearsay rule.  She also argues that exclusion of the
videotape deprived her of her due process right to present a defense.

In reviewing a trial court=s ruling on the admissibility of
evidence, we must determine whether the court abused its discretion.  Willover v. State, 70 S.W.3d 841, 845
(Tex. Crim. App. 2002).  This means that
we must uphold the ruling if it is reasonably supported by the record and is
correct under any theory of law applicable to the case.  Id. 
Furthermore, we must consider the trial court=s ruling in light of what was before
the trial court when the ruling was made. 
Id.








Business Records Exception

Under the business records exception
to the hearsay rule, a record kept in the course of a regularly conducted
business activity is admissible if it was made at or near the time of the event
recorded, by a person who had both personal knowledge of the event and a
business duty to report the event.  See
Tex. R. Evid. 803(6); Stapleton
v. State, 868 S.W.2d 781, 784-85 (Tex. Crim. App. 1993); Cathy Cochran, Texas Rules of Evidence Handbook 836-837 (5th ed. 2003).  If the person supplying the information
contained in a business record did not have a business duty to report the
information, then the information is hearsay within hearsay or double
hearsay.  Stapleton, 868 S.W.2d at
784; Cochran at 841.  Thus, although the business record itself
will be admissible, the information contained within the record will be
inadmissible unless it falls within another exception to the hearsay rule.  Stapleton, 868 S.W.2d at 784; Cochran at 837-38, 841; see also
Tex. R. Evid. 805 (providing that
hearsay within hearsay is admissible if each part of the combined statements
conforms with an exception to the hearsay rule).








Cheek argues that she proved up the
videotape as a business record in her bill of exceptions.  Relying on Porter v. State, 623 S.W.2d
374 (Tex. Crim. App. 1981), she argues that the videotape was admissible.  In Porter, the Court of Criminal
Appeals upheld the admission of a tape recording and transcript of police radio
transmissions.  623 S.W.2d at
382-85.  The court held that the
communications contained within the recording either fell within a hearsay
exception or were not hearsay because they were not offered for the truth of
the matters asserted.  Id. at 385.

Unlike in Porter, Cheek
offered the videotape for the truth of the matters stated therein by Britiny,
and Cheek does not point to any hearsay exception that would make Britiny=s statements admissible.  It is clear that Britiny did not have a
business duty to make the statements. 
Accordingly, the trial court did not abuse its discretion by refusing to
admit the videotape under the business records exception.

Due Process

Cheek also argues that the exclusion
of the videotaped interview of Britiny deprived her of her due process right to
defend herself.  She relies on Chambers
v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

In Chambers, the combination
of Mississippi=s voucher and hearsay rules prevented
the defendant from adequately presenting his defense that another man committed
the crime.  410 U.S. at 294, 93 S.Ct. at
1045.  The hearsay statements that
Chambers sought to admit were declarations against penal interest.  Id. at 299, 93 S.Ct. at 1048.  Mississippi, however, did not treat such
declarations as exceptions to the hearsay rule. 
Id. at 299, 93 S.Ct. at 1048.








The Court explained that hearsay
statements are excluded from evidence because they lack conventional indicia of
reliability.  Id. at 298, 93 S.Ct.
at 1047.  The Court determined, however,
that the declarations against penal interest at issue in the case were made
under circumstances that assured their reliability.  Id. at 300-01, 93 S.Ct. at
1048-49.  Furthermore, the declarant was
present in the courtroom and was under oath, and was thus available for
cross-examination by the State.  Id.
at 301, 93 S.Ct. at 1049.

In concluding that Chambers was
denied due process, the Court stated:

Few rights are more fundamental than that of an
accused to present witnesses in his own defense.  In the exercise of this right, the accused,
as is required of the State, must comply with established rules of procedure
and evidence designed to assure both fairness and reliability in the
ascertainment of guilt and innocence. 
Although perhaps no rule of evidence has been more respected or more
frequently applied in jury trials than that applicable to the exclusion of
hearsay, exceptions tailored to allow the introduction of evidence which in
fact is likely to be trustworthy have long existed.  The testimony rejected by the trial court
here bore persuasive assurances of trustworthiness and thus was well within the
basic rationale of the exception for declarations against interest.  That testimony also was critical to Chambers= defense.  In
these circumstances, where constitutional rights directly affecting the
ascertainment of guilt are implicated, the hearsay rule may not be applied
mechanistically to defeat the ends of justice.

We conclude that the exclusion of this critical
evidence, coupled with the State=s
refusal to permit Chambers to cross-examine [the declarant], denied him a trial
in accord with traditional and fundamental standards of due process.  In reaching this judgment, we establish no
new principles of constitutional law. 
Nor does our holding signal any diminution in the respect traditionally
accorded to the States in the establishment and implementation of their own criminal
trial rules and procedures.  Rather, we
hold quite simply that under the facts and circumstances of this case the
rulings of the trial court deprived Chambers of a fair trial.

 

Id.
at 302-03, 93 S.Ct. at 1049 (citations omitted).








Cheek argues that, as in Chambers,
the videotaped interview was critical to her defense.  She describes this case as a classic AWho done it?@ because Prater and Cheek--the two
people who had the opportunity to injure Alixandra--each claimed that he or she
was not present when the injuries occurred. 
Britiny was the only witness and the only person who could corroborate
Prater=s or Cheek=s version of events.

Cheek also argues, again as in Chambers,
that the videotaped interview contains assurances of trustworthiness.  For this argument, she relies on article
38.071 of the Code of Criminal Procedure. 
Article 38.071 provides that a recording of an oral statement of a crime
victim who is younger than thirteen and who is unavailable to testify in
the presence of the defendant is admissible if the court determines that Athe factual issues of identity or
actual occurrence were fully and fairly inquired into in a detached manner by a
neutral individual experienced in child abuse cases that seeks to find the
truth of the matter.@  Tex. Code Crim. Proc. Ann. art. 38.071,
'' 1-2 (Vernon Supp. 2003); see also
id. ' 5 (setting forth additional requirements
for admissibility); id. ' 8 (setting forth the factors a court should consider in
determining whether the child is unavailable).[3]








Cheek points out that the interview
of Britiny at the Children=s Advocacy Center was conducted in the same way that an
interview of a child victim is conducted. 
Moreover, because the interview was taped, the jury would be able to
evaluate Britiny=s demeanor and credibility, as well as the techniques used by
the interviewer.  Cheek argues that if an
interview of a child victim conducted pursuant to article 38.071=s standards is sufficiently reliable
to overcome hearsay concerns, then an interview of a child witness conducted
under the same standards should also defeat a hearsay objection.  Cheek additionally argues that it is
hypocritical for the State to oppose the admission of a videotaped interview of
a child witness, when it is the State that typically seeks to admit such
interviews of child victims.

In short, Cheek argues that AChambers in its broadest sense stands for the
proposition that the accused has the right to present credible evidence that
someone else committed the crime.@ 
Accordingly, she requests that we extend article 38.071 to make the
videotaped interview of Britiny admissible.

Although Cheek argues for a broad
interpretation of Chambers, courts have steadfastly given it a narrow
one.  In Chambers itself, the
Supreme Court cautioned against overreading the decision.  See Chambers, 410 U.S. at 302-03, 93 S.Ct.
at 1049.  In a later decision, the
Supreme Court essentially rejected Cheek=s interpretation of Chambers.  Noting that AChambers specifically confined its holding to
the >facts and circumstances= presented in that case,@ the Court stated that AChambers . . . does not stand for the
proposition that the defendant is denied a fair opportunity to defend himself
whenever a state or federal rule excludes favorable evidence.@ 
United States v. Scheffer, 523 U.S. 303, 316, 118 S.Ct. 1261,
1268, 140 L.Ed.2d 413 (1998) (citation omitted).  The Court elaborated as follows:








A defendant=s right
to present relevant evidence is not unlimited, but rather is subject to
reasonable restrictions.  A defendant=s interest in presenting such evidence may thus A>bow to accommodate other legitimate interests in the
criminal trial process.=@ As a result, state and federal rulemakers have broad
latitude under the Constitution to establish rules excluding evidence from
criminal trials.  Such rules do not
abridge an accused=s right to present a defense so long as they are not Aarbitrary@ or Adisproportionate to the purposes they are designed to
serve.@  Moreover, we
have found the exclusion of evidence to be unconstitutionally arbitrary or
disproportionate only where it has infringed upon a weighty interest of the
accused.

 

Id.
at 308, 118 S.Ct. at 1264 (citations and footnote omitted); see also Gacy v.
Welborn, 994 F.2d 305, 316 (7th Cir. 1993) (stating that Chambers
stands for the proposition that states must permit defendants to introduce
reliable third-party confessions when direct evidence is unavailable).

Our own Court of Criminal Appeals has
similarly refused to adopt a broad interpretation of Chambers.  The court has noted that A[e]very rule of evidence works a
hardship on some litigants part of the time, and it is easy to sympathize with
the frustration of any party whose most promising strategy turns out to be
objectionable under the law.@  Fuller v. State,
829 S.W.2d 191, 207 (Tex. Crim. App. 1992), overruled on other grounds by
Riley v. State, 889 S.W.2d 290 (Tex. Crim. App. 1994).  Nevertheless, the court held that it is Anot at liberty to relieve every such
disappointment with an ad hoc suspension of the Rules.@ 
Id.








In Fuller, a capital murder
case in which the defendant was sentenced to death, the defendant had
conversations with another inmate in which he indicated that he did not commit
the murder by himself.  A deputy sheriff
prepared a written report containing this information.  The report was based on conversations she had
overheard and on statements from other inmates who had overheard the
conversations.  The defendant attempted
to question the deputy concerning her report, but the trial court excluded this
evidence as hearsay.  Id. at 207.

On appeal, the defendant suggested
that the deputy=s report was admissible under the hearsay exceptions for
public records and reports, even though it did not fit within the literal terms
of the exceptions.  Id.; see
also Tex. R. Evid. 803(8)(B),
(C).  He also argued that applying the
hearsay rule in this situation, as in Chambers, would deprive him of due
process.  Fuller, 829 S.W.2d at
207.  In evaluating these arguments, the
Court of Criminal Appeals distilled the holdings of Chambers and related
cases into the following test:

[R]ules for the admission and
exclusion of evidence should be found offensive to notions of fundamental
fairness embodied in the United States Constitution only when, (1) without a
rational basis, they disadvantage the defendant more severely than they do the
State or (2) arbitrarily exclude reliable defensive evidence without achieving
a superior social benefit. 

Id. at 208.

Applying the test to the case before
it, the court noted that the hearsay exceptions cited by the defendant either
applied equally to the defendant and the State or benefitted only the
defendant.  Therefore, the hearsay the
defendant sought to admit would have been just as objectionable if offered by
the State.  Id.








The same is true in this case.  Cheek suggests that article 38.071 benefits
only the State and that the State is hypocritically trying to exclude a class
of evidence that it frequently seeks to admit. 
On its face, however, article 38.071 expressly allows either the State
or the defendant to admit videotaped oral statements of victims.  See Tex.
Code Crim. Proc. Ann. art. 38.071, ' 5 (stating that, if certain
requirements are met, the recording of an oral statement is admissible A[o]n the motion of the attorney
representing the state or the attorney representing the defendant@). 
The business records exception also applies equally to the State and
defendants.  See Tex. R. Evid. 803(6).[4]

Turning to the second part of the
test, the Fuller Court concluded that the hearsay rule did not
arbitrarily exclude reliable defensive evidence without achieving a superior
social benefit.  The court noted that the
defendant elicited virtually the same information in the deputy=s report by directly examining the
inmate from whom the deputy obtained the information.  Fuller, 829 S.W.2d at 208.  The defendant contended, however, that the
written report was more desirable to him than the inmate=s testimony because the inmate gave
testimony that was detrimental to the defendant during cross-examination.  The court summarized and rejected the
defendant=s contention this way:

Evidently,
[the defendant] believes that the United States Constitution somehow prefers a
written report to the live testimony of a witness whenever it might enable an
accused to curtail the State=s opportunity for effective cross examination.

This proposition is, of course, untenable.  It is inconceivable that the United States
Constitution would sanction the suppression of relevant inculpatory evidence
under the aegis of a doctrine whose very purpose is the removal of unreasonable
obstacles to the truth-finding process.

 








Id.

We believe this reasoning applies in
this case too.  Although Cheek focuses
her arguments on the fact that article 38.071 provides only for the
admissibility of statements of child victims and not child witnesses, there is
a more important reason why article 38.071 should not be extended to apply
here.  The statute states, AThis article applies only to a
hearing or proceeding in which the court determines that a child younger than
13 years of age would be unavailable to testify in the presence of the
defendant . . . .@  Tex. Code Crim. Proc. Ann. art. 38.071,
' 1 (emphasis added).  In this case, the court determined that
Britiny was competent to testify and expressly stated that the defense could
call her as a witness if it desired to do so. 
It is also clear from the record that Britiny=s testimony may very well have been
unfavorable to Cheek.  But, as in Fuller,
the fact that Britiny may have given testimony detrimental to Cheek does not
entitle Cheek to have the videotaped interview admitted in lieu of calling her
as a witness.

Article 38.071 provides a way for a
jury to hear from a child when the child is unable to testify in court.  By requiring that the child be unavailable to
testify, the Legislature expressed a preference for live, in-court testimony.  Under the circumstances of this case, we are
unable to conclude that this preference is an arbitrary one.

The first and second points of error
are overruled.








Failure to Disclose Exculpatory
Evidence

In her third point of error, Cheek
argues that the trial court should have dismissed the case or granted a ten-day
continuance when the videotaped interview was discovered.

To obtain a reversal because of the
tardy disclosure of exculpatory evidence, the defendant must show that the
evidence was material.  Ex parte
Richardson, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002); Wilson v. State,
7 S.W.3d 136, 146 (Tex. Crim. App. 1999). 
In other words, the defendant must show a reasonable probability that
the result of the proceeding would have been different if the evidence had been
disclosed earlier.  Wilson, 7
S.W.3d at 146; see also Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct.
1555, 1566, 131 L.Ed.2d 490 (1995) (AThe question is not whether the
defendant would more likely than not have received a different verdict with the
evidence, but whether in its absence he received a fair trial, understood as a
trial resulting in a verdict worthy of confidence.@).








In determining whether the defendant
has satisfied this burden, we may consider the adverse effect that
nondisclosure had on the preparation or presentation of the defendant=s case.  See United States v. Bagley, 473 U.S.
667, 683, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985); Thomas v. State,
841 S.W.2d 399, 405 (Tex. Crim. App. 1992). 
We must consider the totality of the circumstances and be mindful of the
difficulty of reconstructing the course that the defense and the trial would
have taken if the evidence had been timely disclosed.  See Bagley, 473 U.S. at 683, 105 S.Ct.
at 3384; Thomas, 841 S.W.2d at 405.

Cheek acknowledges that the trial
court delayed the trial for a few hours to allow the defense to consider the
issues raised by the videotape, but she argues that this time was
insufficient.  She asserts that she
needed more time to research the admissibility of the videotape and to
investigate whether the videotape could lead to additional evidence.








These assertions fall far short of
establishing a reasonable probability that the result of the trial would have
been different.  Regarding the assertion
that more time was needed to research the admissibility of the videotape, we
note that six months elapsed between the trial and the filing of Cheek=s appellant=s brief.  Yet Cheek does not point to any ground for
admitting the videotape other than the grounds she raised at trial.  Regarding the assertion that more time was
needed to investigate whether the videotape would lead to additional evidence,
Cheek does not point to anywhere in the record to show what evidence would have
been admitted if there had been additional time to investigate, nor does she
give us any reason to believe that additional evidence exists.  See Wilson, 7 S.W.3d at 146 (refusing
to reverse in a tardy disclosure case because the defendant failed to point to
anywhere in the record to explain what witnesses might have been called if
there had been additional time to investigate and failed to show any reason to
believe that additional witnesses exist); Hampton v. State, 106 S.W.3d
846, 853-54 (Tex. App.--El Paso 2003, no pet. h.) (refusing to reverse in a
tardy disclosure case because whether the late-disclosed information would have
assisted the defense was speculative); Nelloms v. State, 63 S.W.3d 887,
892 (Tex. App.--Fort Worth 2001, pet. ref=d) (refusing to reverse in a tardy
disclosure case because the defendant=s assertions of prejudice lacked
evidentiary support).

The third point of error is
overruled.

Conclusion

For the reasons stated herein, the
judgment of the trial court is affirmed.

 

 

SUSAN
LARSEN, Justice

October 30, 2003

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 

(Publish)











[1]It
is undisputed that the prosecutor did not know anything about the videotape
until defense counsel told her about it.





[2]In
the videotape, Britiny describes Alixandra as her Ababy.@ 
She states that ADavid@ Aspanked@ her and her baby on the Abutt@
with a Apaddle.@ 
When asked if David spanked her baby on other places, such as her leg,
arm, or face, Britiny eventually stated that David spanked her baby on the face
while her mom was gone.  She also
demonstrated how he hit Alixandra=s
face with his hand.  Britiny gave
nonsensical answers to some of the interviewer=s
questions.  For example, she answered
some questions with a random series of numbers (such as 8,9,4,5,7,8) when the
questions did not call for a numerical answer. 
Britiny stated that she saw blood and red Aboogers@ come out of Alixandra=s nose. 
When asked what else she saw when she saw the boogers, she responded, ADinosaur.@





[3]The
Family Code contains a provision similar to article 38.071.  See Tex.
Fam. Code Ann. '
104.002 (Vernon 2002).  The Family Code
provision, which applies to suits affecting the parent-child relationship, does
not require the victim to be unavailable. 
See id.





[4]Cheek=s attorney argued in the trial court
that if Britiny had implicated Cheek in the videotaped interview, the State
would be arguing for its admission into evidence.  The judge responded, AWell,
I don=t know
whether they would be or not.  If they would,
I don=t think
they would be any more successful . . . .@