Berkins BOOKER, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–94–171 CR.

Court of Appeals of Texas,
Beaumont.

Aug. 7, 1996.

John D. MacDonald, II, Conroe, for appellant.

Daniel Rice, District Attorney, Gail Kikawa McConnell, Assistant District Attorney, Conroe, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

This is an appeal from a conviction for attempted capital murder with a deadly weapon. The appellant pleaded not guilty to the charge; trial was to a jury, which found appellant guilty as charged in the indictment. On February 17, 1994, after hearing evidence on punishment, the trial court sentenced appellant to 99 years in the Institutional Division of the Texas Department of Criminal Justice and fined appellant $10,000. The trial court also made an affirmative finding that a deadly weapon was used in the commission of the crime. Appellant filed his motion for new trial on February 23, 1994, which was overruled by operation of law. This appeal then followed.

*Facts* .

On October 21, 1991, James Wade Bailey, a certified peace officer employed by the Harris County Constable's Office, Precinct 4, was assigned to the 10:00 p.m. to 6:00 a.m. shift in the Kingwood patrol district in northeast Harris County near IH 59 and the Montgomery County line. Around midnight, Officer Bailey was flagged down by a pedestrian who reported that he was concerned for his safety because three black males driving three separate automobiles had driven past him several times with their headlights off.

Bailey asked the pedestrian to point to the direction from which the vehicles had come, and the pedestrian pointed up the road to the north. At that point, Bailey noticed three vehicles, without their headlights on, approaching him at a high rate of speed. Approximately fifty feet after the vehicles drove past him, they ran a stop sign. Officer Bailey then began his pursuit. Although Bailey testified he could not be sure of the color of the first vehicle (he thought it was green), the second vehicle was a maroon Chrysler LeBaron convertible with a black top, and the third vehicle was a blue Ford LTD.

Bailey continued to follow the three vehicles and attempted to contact other police units on his radio for assistance. As the chase continued, Officer Bailey noticed other traffic violations by the drivers of the three vehicles he was pursuing. The blue Ford LTD at one time collided with the Chrysler LeBaron. Ultimately, the chase poured over into Montgomery County. As the three vehicles sped onward, the blue Ford LTD

slammed on its brakes, turning sideways, in a maneuver that the officer considered to be an attempt to block him off and remove him from the chase. Officer Bailey took evasive action and thereby avoided a collision; the blue Ford went out of control and appeared to hit a tree. At that point Bailey was closing in on the Chrysler LeBaron. The vehicular portion of the chase came to an end when the LeBaron crashed into a ditch along the fence line on the back side of the New Caney High School in New Caney, Texas.

Officer John Holobeck of the Roman Forest Police Department responded to Officer Bailey's call for assistance and arrived at the location in time to see both vehicles (the Chrysler LeBaron and Officer Bailey's patrol car) approaching him and witnessed the end of the chase with the LeBaron crashing into the ditch and Bailey's unit being side by side, but approximately 55 to 60 feet away, on top of the pavement itself. Officer Holobeck stopped his unit approximately 25 or 30 feet from the scene.

Bailey testified that when he stepped out of his patrol unit, he looked up and saw appellant already out of the Chrysler LeBaron and "in a prone position across the top of his car." Booker "came over with both hands, in a shooter's stance, across the top of the vehicle." Bailey then saw a flash of light, which he described as a muzzle flash, and heard the report of a gunshot. According to Bailey, the weapon was pointed right at him. There were no other persons around when the appellant allegedly fired the shot[s]. Bailey testified that after he (Bailey) fired, appellant "got back up and fired again." At that point, Bailey fired several more rounds. After Booker fired at Bailey, Booker then ran northbound, down the fence line of 494 and the New Caney High School, with Bailey in pursuit.

During the gunfire, Officer Holobeck arrived on the scene. Holobeck stated he saw a muzzle flash from Bailey's gun but not from appellant's gun. He observed appellant get up off the ground and run north along the fence line. Exiting his vehicle, Officer Holobeck yelled at appellant to get face down on the ground. Appellant complied and fell face down on the ground with his left arm

beneath him. Officer Bailey handcuffed appellant and found the weapon underneath him. Appellant's arm had been struck by one of Bailey's bullets.

Appellant brings forth four points of error. In point of error four, appellant challenges the legal sufficiency of the evidence to support the verdict.

■ In reviewing the sufficiency of the evidence, this court must determine whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Emery v. State*, 881 S.W.2d 702, 705 (Tex. Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). The standard is applicable to both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 163 (Tex.Crim.App. 1991).

■ The jury is the trier of fact, the sole judge of the credibility of the witnesses and the weight to be given their testimony. TEX.CODE CRIM. PROC. ANN. art 38.04 (Vernon 1979). The jury may accept or reject all or any part of the testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. 1981). Contradictions in the evidence are reconciled by the jury and will not result in reversal so long as there is enough credible testimony to support the verdict. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App. 1982). Additionally, the jury may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. *Wawrykow v. State*, 866 S.W.2d 87, 88 (Tex.App.—Beaumont 1993, pet. ref'd).

■ The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the appellant's evidence outweighs the State's evidence. *See Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469

U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson,* 819 S.W.2d at 846.

▪ The appellant does not deny that the weapon he was holding discharged; what he does claim, however, is that the gun accidentally discharged when he hit it on the top of the LeBaron as he was trying to exit from the car. Appellant's testimony is in direct opposition to Officer Bailey's testimony that he saw Booker point the gun and fire at him.

Other testimony offered by the State was from officers who investigated the crime scene. Officer Segelski, crime scene investigator with the Montgomery County Sheriff's Department, testified a single .380 shell casing was found on the scene by appellant's vehicle. The gun discovered under appellant was a small .380 black semi-automatic pistol. According to Dan Norris, detective with the Montgomery County Sheriff's Department, the location of the shell casing was consistent with a person pointing a weapon across the top of the vehicle. Like Officer Norris, Segelski also stated that the location of the shell was consistent with a person standing and shooting over the top of a car. Although Officer Bailey testified that appellant fired more than once, only one .380 casing was found. That bullet was determined to have been fired from the gun found under appellant. No bullet damage was found on Bailey's vehicle. On cross examination, Officer Segelski agreed that if Booker had been holding the gun straight up or straight down, as opposed to straight across the top of the car, the casing would have fallen in a similar location.

The butt plate and the retainer spring, which were missing from appellant's gun, were found in the seat of appellant's car. Five live rounds were inside the clip; the gun holds seven. Without the butt plate and magazine spring, the only way to fire the gun was to load it singly. Various theories were advanced to explain the absence of the butt plate and the spring. Hitting the plate itself with something, striking the top of a car or some other hard object with the plate, or a bullet's striking the plate were described as possible ways the plate could have come off the gun.

As appellant's counsel declared in his opening statement, the jury was asked to determine whether appellant, with the specific intent to kill Officer Bailey, fired a firearm at Bailey. The jury heard Officer Bailey's testimony which, though at odds with appellant's account, was clear and unequivocal. Moreover, the testimony of the crime scene investigators established that the .380 casing found by appellant's vehicle was fired from the gun held by appellant. Based on the evidence presented to it, the jury judged the credibility of the witnesses and the weight to be given their testimony and concluded that appellant had the specific intent to kill Officer Bailey when he fired the gun at Bailey. Considering the evidence in the light most favorable to the verdict, the trier of fact in the instant case could have found the essential elements of the crime beyond a reasonable doubt. Appellant's point of error four is overruled.

▪ In point of error one, appellant contends the trial court erred when it allowed the State to introduce evidence of an extraneous offense of aggravated robbery which had not resulted in a final conviction. Appellant testified in his own defense and on direct examination specifically denied that the gun in the LeBaron was his. According to appellant, he noticed it (the gun) during the chase. On cross-examination the prosecutor asked the appellant if he owned the gun or had anything to do with putting it in the car. Again appellant denied the gun was his and denied that he had anything to do with putting the gun in the car. Later, during cross-examination, the State asked the appellant:

Q So, are you telling this jury that you stopped, and you picked up the red car?

A Picked up two cars.

Q The red car, and what other car?

A The blue car.

Q The blue car? Where did you pick them up at?

A I don't know the area.

Q In Kingwood?

A   Yes sir.

Q   Did you go in any house over there?

A   No.

Q   Did you talk to anybody over there?

A   No.

Q   Did anybody give you permission to use that car?

A   No.

Q   You understand you're under oath here, don't you?

A   Yes.

Q   You understand that if you tell a lie, while you're sitting there, that you can be charged with aggravated purgery [sic], do you not?   Now, I ask you again, did you go to a house over in that area?

A   No.

Q   You never went into a house?

A   No.

Q   You never had that gun, did you?

A   No.

Q   The gun was in the car, is that correct?

A   The gun was in the car.

Q   And so, if I bring the owner of the car in here, and they say, "That ain't my gun, and I ain't never seen it before." What are you gonna say to that?

A   It wasn't my gun.   It could have been, it could have been John's.

After several more questions and answers concerning whether or not the appellant first noticed the gun in the car or whether he owned and/or possessed the gun, the following exchange occurred:

Q   And you didn't go into a house over in that area, did you?

A   No, I did not.

Q   You never went into a house?

A   No, I did not.

Q   And you never took that gun into a house, did you?

A   No, I did not.

Q   You and another person never went into a house with two guns, did you?

A   No, I did not.

Q   Okay.   You and another person with a gun, never went into a house and robbed two ladies at gunpoint, did you?

   *BY MR. MAC DONALD:*   Judge, we'll object to the relevancy.   This is not what he testified to.   I think we're getting into other matters that we've discussed before, Judge.   We haven't opened that up in his testimony.   He never went into that in his testimony on Direct Examination.

   *BY THE COURT:*   Overruled.

*BY MR. TIFFIN:* (Continuing)

Q   And you never went into a house?

A   No sir.

Q   In the Kingwood Subdivision?

A   No.

Q   With a gun in your hand, and a gun in another person's hand, and robbed two women at gunpoint, did you?

A   No.

Q   So, if I bring those people in here, and they get on the stand, and they say, yes you did, then they're telling an untruth, aren't they?

A   They would be wrong, sir.

Q   They'll be absolutely wrong?

A   Yes.

Over appellant's objection, the trial court allowed the State to introduce testimony from Jean Sherner concerning the extraneous aggravated robbery.

■■■   It is improper to try a defendant for being a criminal.   *Alba v. State,* 905 S.W.2d 581, 585 (Tex.Crim.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996).   Therefore, an extraneous offense must be shown to be *relevant,* apart from character conformity, before it may be admitted into evidence.   *Id.*   If relevant, the extraneous offense must be shown to have more probative value than prejudicial impact.   *Id.*   However, the trial court does not engage in this balancing test *unless* the opponent of the evidence further objects under TEX.R.CRIM. EVID. 403.

■■■   Whether evidence of other crimes has relevance apart from character conformity, so as to be admissible, is a question for the trial court, subject to an abuse of discre-

tion standard of error. Tex.R.Crim. Evid. 404(b); *Lum v. State,* 903 S.W.2d 365 (Tex. App.—Texarkana 1995, pet. ref'd). On appellate review, the Court of Criminal Appeals defers to the trial court's decision respecting admission of extraneous offenses evidence and overrules the trial court's decision only upon finding that decision was outside the bounds of reasonable disagreement. *See Rogers v. State,* 853 S.W.2d 29, 32 (Tex.Crim. App.1993).

The general rule is that evidence of other crimes, wrongs, or acts of a person is not admissible to prove the person's character in order to show that he acted in conformity with that character. Tex.R.Crim. Evid. 404(b). However, this type of evidence may be admissible for other purposes, such a proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

■ The threshold inquiry the trial court must make before admitting evidence of extraneous acts is whether it is relevant to prove a material issue other than the defendant's character. *Turner v. State,* 754 S.W.2d 668, 672 (Tex.Crim.App.1988). Evidence of other crimes, wrongs, or acts is admissible when it logically serves to make more probable either an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact. *Montgomery v. State,* 810 S.W.2d 372, 387–388 (Tex.Crim. App.1991) (opinion on rehearing).

■ The State alleges the aggravated robbery *extraneous offense was admissible to* refute the appellant's defense of accident and to correct the false impression left by appellant's direct testimony that the gun was not his and that he noticed it for the first time in the car. "When the accused claims self-defense or accident, the State, in order to show the accused's intent, may show other violent acts where the defendant was an aggressor." *Robinson v. State,* 844 S.W.2d 925, 929 (Tex.App.—Houston [1st Dist.] 1992, no pet.). Furthermore, it is well-established that extraneous offenses are admissible to negate or rebut the possibility of accident. *Bryson v. State,* 820 S.W.2d 197, 199 (Tex. App.—Corpus Christi 1991, no pet.). In *Bal-*

*donado v. State,* 745 S.W.2d 491, 496 (Tex. App.—Corpus Christi 1988, pet. ref'd), the court found testimony to be admissible that on the same night as the offense in question appellant had used a gun in the commission of a robbery. The evidence was admissible to negate the claim of accident.

■ Moreover, the extraneous offense in the instant case is also admissible to establish the motive for the attempted murder of Officer Bailey. Having committed an aggravated robbery a few hours before the attempted murder of Officer Bailey, appellant did not want to be arrested or apprehended. As he testified at trial, he wanted to escape and believed he could escape. In *Porter v. State,* 623 S.W.2d 374, 385–386 (Tex.Crim. App.1981), *cert. denied,* 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982), the State was permitted to show the commission of a robbery eleven days before defendant's murder of a police officer, since it created an inference that defendant's motive for murder was to avoid apprehension. Evidence of motive is always proper and relevant to assist in proving the defendant committed the charged offense. *Sypniewski v. State,* 799 S.W.2d 432, 434 (Tex.App.—Texarkana 1990, pet. ref'd). Consequently, we conclude that the extraneous offense of aggravated robbery was relevant under Rule 404(b). We do not, however, engage in the balancing test under Tex.R.Crim. Evid. 403, since appellant lodged no objection on the grounds that the admission of the extraneous offense was more prejudicial than probative. *Alba,* 905 S.W.2d at 585. Point of error one is overruled.

In point of error two, appellant alleges the trial court erred when it allowed the State to impeach the appellant on cross-examination with an unadjudicated offense of attempted murder. During cross-examination, the State, over appellant's objection, asked if appellant had ever pointed a gun at someone and pulled the trigger? Booker replied in the affirmative.

Although appellant's counsel on appeal contends the incident was the subject of deferred adjudication, and, thus, inadmissible for impeachment purposes, it is not clear from the record that the reference in the

pre-sentence investigation report to a deferred adjudication of an attempted murder charge is the same offense which the State was allowed to put into evidence; however, appellant testified at trial that he was on probation in regard to that charge.

The State did not specify at trial whether it was seeking to admit the evidence under Rule 404(b), 608, or 609. The trial judge simply declared that the appellant had "opened the door" with his answers and allowed the evidence in. The record reveals:

Q Mr. Booker, from the point where your car went into the ditch, until where you were finally subdued by the officer, is about 391 feet.

A Uh-huh.

Q Now, you would agree with me that that's a little longer than the length of a football field, right?

A Yes sir.

Q So, instead of taking the direct route from your vehicle, across the street, into the woods here, the quickest way to get lost, you chose to run 391 feet down this fence line?

A Uh-huh.

Q Before you were gonna cut across to the woods, is that correct?

A Yes.

Q And you want the jury to believe that you were trying to get away quickly?

A Yes sir.

Q And that you're pretty fast?

A It's hard to cut across the street when you're being shot at, sir.

Q Did you ever think that if you hadn't shot at the officer, you wouldn't be being shot at?

A I never shot at the officer, sir?

Q You wouldn't admit it if you had, would you?

A Yes, I would.

Q You would? You'd tell this jury you shot at that officer?

A If I would have shot at the officer, sir, I would have stopped at the time.

Q You'd stand right there—you'd sit right there in that witness chair, and tell this jury that you would take a gun and point it at an officer, and try to kill him?

A If I did it.

Q If you did?

A If I did it, I would have copped out at the time, sir. I wouldn't have took it to trial.

Q Have you ever done anything like that before?

A What? Shot at an officer?

Q Have you ever pointed a gun at somebody and pulled the trigger?

BY MR. MAC DONALD: Objection, Your Honor. It's not relevant.

BY THE COURT: Overruled.

BY MR. TIFFIN: (Continuing)

Q Have you?

BY MR. MAC DONALD: May we approach the Bench, Judge?

BY THE COURT: Yes sir.

**BENCH CONFERENCE**

BY MR. MAC DONALD: He's just trying to find a back door to get him to admit to an offense that he hasn't been convicted of.

BY THE COURT: Well, I think we've opened the door, counsel. If he answers, I'm gonna let Mr.—

BY MR. MAC DONALD: Well, we're saying he's opened the door.

BY THE COURT: Well, he's opened the door with his answers. He's asked the question. So, I don't think he's asked any question that's out of line, at the present time.

BY MR MAC DONALD: But Judge, it's highly prejudicial. It's irrelevant, and we object to it.

BY THE COURT: Okay. Overrule the objection.

**CROSS-EXAMINATION** (Continuing)

BY MR. TIFFIN:

Q Mr. Booker, have you ever pointed a gun at somebody and pulled the trigger?

A Yes sir.

Q You have?

A Yes sir.

Q Where?

A In Beaumont.

Q Did you hit them?

A Yes.

Q Did you kill them?

A No.

Q Were you ever tried for that?

A No.

Q What happened with that?

A I got probation.

Q What was the charge, if you know?

A Attempted murder.

Q Are you on probation now?

A Yes sir.

Q For that charge?

A For that charge.

■■■ Appellant objected to the evidence on the grounds that it was highly prejudicial and irrelevant. Once the appellant lodges that complaint, "it is incumbent upon the proponent of the evidence to satisfy the trial court that the 'other crime, wrong, or act' has relevance apart from its tendency 'to prove character of a person in order to show that he acted in conformity therewith.'" *Montgomery*, 810 S.W.2d at 387.

On appeal appellant contends that the issue of whether or not he ever pointed a gun at someone and pulled the trigger is collateral to the charge of attempted capital murder. In contrast, the State contends on appeal that an extraneous offense is admissible for purposes of showing intent or absence of accident and thus is admissible under Rule 404(b).

■■■ We conclude that the trial court abused its discretion in admitting testimony regarding the alleged attempted capital murder. The previous attempted capital murder charge did not show relevance apart from character conformity and, thus, is not admissible under Rule 404(b). Even though appellant admitted he had previously shot someone, that evidence was not admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or acci-

dent. Evidence that Booker at some unspecified previous point in time used a gun to shoot someone does not serve to make more probable or less probable an elemental fact in the instant case; it does not serve to make more probable or less probable an evidentiary fact that inferentially leads to an elemental fact; and it does not serve to make more probable or less probable defensive evidence that undermines an elemental fact. *See Montgomery*, 810 S.W.2d at 387. Consequently, we find that the extraneous offense evidence is not relevant apart from supporting an inference of character conformity and, thus, is inadmissible under Rule 404(b).

■■■ Neither is the extraneous offense admissible under Rules 608 or 609. The general rule is that a defendant who takes the witness stand may be impeached, contradicted, cross-examined on new matters, and treated in every respect as any other witness. *Sanchez v. State*, 707 S.W.2d 575, 577 (Tex.Crim.App.1986); *Williams v. State*, 906 S.W.2d 58, 62 (Tex.App.—Tyler 1995, pet ref'd). Under TEX.R.CRIM. EVID. 609, the State is allowed to impeach a witness by evidence of conviction of a crime which is a felony or which involves moral turpitude. If the evidence is admissible under Rule 609(a), the court must then determine if the probative value of admitting the evidence outweighs its prejudicial effect. Courts have carved out exceptions to the rule's requirement of a conviction in those instances when the defendant opens the door by stating he has had no problems with the law or when the defendant creates a "false impression" of being a law-abiding citizen. *Delk v. State*, 855 S.W.2d 700, 704 (Tex.Crim.App.), *cert. denied*, 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993).

In the instant case, there is no probative evidence in the record that appellant was actually *convicted* of the particular extraneous offense sought to be admitted into evidence. Moreover, the exceptions allowed under Rule 609, pertaining to the defendant's opening the door by stating he had not had problems with the law or by defendant's creating a false impression of law-abiding

behavior, do not apply since appellant did neither in this case.

■ Rule 608(b) provides that specific instances of conduct for the purpose of attacking or supporting a witness's credibility, other than conviction of a crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence. The general rule is that a party may not impeach a witness on a collateral matter and then contradict the defendant's answer. *Drone v. State*, 906 S.W.2d 608, 615 (Tex.App.—Austin 1995, pet. ref'd). Put another way, a witness may not be impeached on a collateral matter which the cross-examining party would not be entitled to prove as part of his case. *Ramirez v. State*, 802 S.W.2d 674, 675 (Tex.Crim.App. 1990). The exception occurs when the witness gratuitously testifies as to some matter that is irrelevant or collateral to the proceeding; as with any witness he may be impeached by showing he has lied or is in error as to the matter. *Id.* However, the State cannot bootstrap its way to such impeachment by eliciting the offending statement on cross-examination, then contradicting it. *Hammett v. State*, 713 S.W.2d 102, 105 n. 4 (Tex.Crim.App.1986). This rule has been applied as an exception to Rules 608(b) and 609, which restrict admission of prior unadjudicated extraneous offenses and convictions—where the accused creates a false impression of his law-abiding behavior. *Delk*, 855 S.W.2d at 704.

The extraneous offense of attempted murder was a collateral matter. Whether or not appellant ever pointed a gun and shot at someone in the past is collateral to the present offense of attempted murder. The State would not have been entitled to prove the prior conduct as part of its case tending to establish its plea. *See Ramirez*, 802 S.W.2d at 675. The fact that the appellant at sometime in the past had pointed a gun at any person and pulled the trigger had no tendency to make the existence of any fact that was of consequence to the State's case against Booker any more or less probable than it would have been without it. *See Rische v. State*, 834 S.W.2d 942, 946 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Moreover,

the fact that Booker had done such an act in the past had no tendency to rebut the appellant's defensive theory of accident.

We determine the extraneous offense of attempted murder was not admissible under Rules 404(b), 608, or 609; consequently, we are not required to perform the probative vs. prejudicial balancing test. If such a test had been performed, however, the admission of the extraneous offense would have been more prejudicial than probative, and the error would not have been harmless.

■ Having concluded that the trial court erred in admitting the extraneous offense of attempted murder, we now consider whether the error was harmless. The applicable legal standard is whether, in light of the record as a whole, there is a reasonable possibility the evidence complained of might have contributed to appellant's conviction or punishment. *See Denton v. State*, 920 S.W.2d 311 (Tex.Crim.App.1996). According to *Denton*, the appellate court is to apply the correct legal standard and consider the relevant factors outlined in *Harris v. State*, 790 S.W.2d 568, 584–589 (Tex.Crim.App.1989). To properly conduct a harm analysis, the reviewing court should:

> [E]xamine [1] the source of the error, [2] the nature of the error, [3] whether or to what extent it was emphasized by the State, and [4] its probable collateral implications. Further, the court should consider how much weight a juror would probably place upon the error. In addition, the Court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity.

*Harris*, 790 S.W.2d at 587.

■ During the guilt/innocence stage of the trial, the State sought to introduce evidence of an extraneous offense allegedly committed by appellant at some point in the past. The extraneous offense was the same as the offense for which appellant was being tried—namely, attempted murder. Evidence of a previous attempted murder offense would impact heavily on the jury's verdict, since that was the very charge on which appellant was being tried. The offense tended to show that appellant acted in conformity

with a character propensity to attempt to murder people.

We also recognize that the presence of overwhelming evidence of appellant's guilt can be a factor in our evaluation of harmless error. *See Denton,* 920 S.W.2d at 312; *Etheridge v. State,* 903 S.W.2d 1, 11 (Tex.Crim. App.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995). If there is overwhelming evidence of appellant's guilt otherwise, the error may be harmless. In the instant case, there was no overwhelming evidence of appellant's guilt. Only two persons were present at the time Booker's gun discharged; Bailey testified Booker intentionally fired at him, while Booker testified the discharge of the weapon was accidental. To allow into evidence testimony concerning a prior offense of attempted murder would weigh heavily on the jury's decision-making process. In light of the evidence before the jury (i.e., testimony of Bailey, Booker, and the crime scene investigators), it cannot be said that there was such overwhelming evidence of appellant's guilt that the error was harmless.

We conclude under *Denton* that, in light of the record as a whole, there is a reasonable possibility that the extraneous evidence of attempted murder might have contributed to appellant's conviction. Consequently, we conclude that the error in admitting the extraneous offense of attempted murder was harmful and, therefore, reversible. To conclude otherwise would encourage the State to repeat the error with impunity by seeking to introduce those extraneous offenses clearly in violation of Rules 404(b), 608, or 609. Point of error two is sustained.

In view of our disposition of the case under point of error two, it is unnecessary to consider point of error three.

Therefore, we reverse the judgment and sentence of the court below and remand the cause for a new trial.

REVERSED AND REMANDED.

1. Ordinarily it would be more judicious to refrain from comment. However, since this case is to be remanded, the issue may possibly arise in

BURGESS, Justice, concurring.

I concur in the court's judgment. I write only to note I would sustain point of error one and reverse on that point also.[1] My colleague holds the evidence of the aggravated robbery was admissible to negate the claim of accident and to establish motive. As noted, the issue first surfaced when Booker denied ownership of the gun. It was uncontroverted that Booker was holding the gun and the gun discharged. Booker's claim that the gun discharged accidently went to the issue of whether he intentionally fired at Officer Bailey. The ownership of the gun is irrelevant to that issue. The State was still concerned about the gun's ownership when the prosecutor asked about Booker *going* into a house and robbing two ladies at gunpoint. Booker denied the robbery. The State was then allowed to bring one of the ladies to testify Booker had entered her home and robbed her. The State offered the evidence solely to impeach Booker's credibility, that he was "not telling the truth at all." The state never indicated the evidence was offered for anything other than impeachment, certainly not to show motive. TEX. R.CRIM. EVID. 608(b) states specific instance *of conduct, for the purpose of attacking credibility, other than conviction of a crime, may not be inquired into on cross-examination.* Therefore, in my view, the trial court erred in allowing the robbery victim to testify in rebuttal. The judgment having been reversed and remanded, I concur.

WALKER, Chief Justice, dissenting.

Respectfully, I dissent to the majority's sustaining of appellant's point of error two, holding that the trial court abused its discretion in admitting testimony regarding an alleged attempted murder. I give strong consideration to the fact that appellant chose to take the stand and testify to events and circumstances resulting in his indictment and trial. Appellant wanted the jury to believe that the discharge of the weapon was non-voluntary conduct, thus a defense. *See*

the retrial and the trial judge is entitled to know the position of each member of the court on each issue.

*Adanandus v. State,* 866 S.W.2d 210, 229 (Tex.Crim.App.1993).

The majority concludes that the trial court abused its discretion in admitting testimony regarding the alleged attempted capital murder, holding that "[T]he previous attempted capital murder charge did not show relevance apart from character conformity and, thus, is not admissible under Rule 404(b)." The majority determines that even though appellant admitted that he had previously shot someone under circumstances amounting to criminal conduct, that evidence was not admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

It is not the role of this appellate court to second guess the evidentiary decision made by the Trial Judge, Olen Underwood, Judge Presiding.

"Evidence is 'relevant' that has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Montgomery v. State,* 810 S.W.2d 372, 386 (Tex.Crim. App.1991) (opinion on rehearing); Tex. R.Crim. Evid. 401. "[A]lthough relevant, '[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.'" *Montgomery,* 810 S.W.2d at 386; Tex.R.Crim. Evid. 404(b). "Evidence of 'other crimes, wrongs, or acts' 'may, however, be admissible' if it has relevance *apart from* its tendency 'to prove the character of a person in order to show that he acted in conformity therewith.'" *Montgomery,* 810 S.W.2d at 387; Tex.R.Crim. Evid. 404(b). Proof of intent or absence of accident are admissible purposes for which extraneous offense evidence is relevant beyond its tendency "to prove the character of a person in order to show that he acted in conformity therewith." *Id.* Such evidence is therefore admissible, "subject only to the trial court's discretion nevertheless to exclude it 'if its probative value is substantially outweighed by the danger of unfair prejudice....'" *Montgomery,* 810 S.W.2d at 387; Tex.R.Crim. Evid. 403.

The ultimate question is whether the extraneous offense tends to disprove the appellant's explanation of the primary offense. The presence or absence of similarity is not entirely determinative of the admissibility of the extraneous offense. If the extraneous offense is relevant in tending to disprove the defensive theory, it should be admissible.

*Halliburton v. State,* 528 S.W.2d 216, 219 (Tex.Crim.App.1975) (op. on motion for reh'g).

"When the accused claims self-defense or accident, the State, in order to show the accused's intent, may show other violent acts where the defendant was an aggressor." *Robinson v. State,* 844 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1992, no pet.).

"[T]he trial court must be given wide latitude to exclude, or, particularly in view of the presumption of admissibility of relevant evidence, *not* to exclude misconduct evidence as he sees fit." *Montgomery,* 810 S.W.2d at 390. "[A]n appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement." *Id.* at 391.

The majority overlooks that on direct examination appellant placed intent at issue by claiming that the shooting was accidental in nature, free of criminal intent. Appellant injected the defense of non-voluntary conduct in the case, *see* Tex. Penal Code Ann. § 6.01(a) (Vernon 1994), and in order to refute or disprove this defense it became relevant to prove that on another occasion appellant had shot or shot at two other people, intentionally and knowingly. *Halliburton,* 528 S.W.2d at 219. As provided by Rule 404(b), these prior offenses, originally charged as two counts of attempted murder, *were* admissible to refute appellant's defense. *Albrecht v. State,* 486 S.W.2d 97, 103 (Tex. Crim.App.1972); *Robinson,* 844 S.W.2d at 929.

At trial, appellant objected to the evidence as "highly prejudicial" and "irrelevant." Thus, the zone of reasonable disagreement has been triggered. It is here that the trial court's discretion comes into play and appellate courts should refrain from trial judge

role-play by overanalyzing this area of discretion.

Here, appellant injected the defense of non-voluntary conduct and innocent intent in the trial, contradicting the testimony of Deputy Bailey that appellant aimed directly at him and fired. There were no other witnesses to the shot fired by appellant. And other than the gunshot wound suffered by appellant from Deputy Bailey's return fire, there was no physical evidence to corroborate Deputy Bailey's testimony: Deputy Bailey was not wounded by the shot, his patrol car was not damaged, and the bullet was not recovered. The State had no other convincing evidence to establish the ultimate issue of intent, the only contested issue in the case.

The probative value of appellant's prior offenses to show that appellant had pointed a gun at somebody and pulled the trigger,[1] was not particularly prejudicial in combination with the other evidence. While similar in intent, the fact situation of the offense in the primary case was different: the victim was a peace officer and the shooting occurred after a high speed chase. Only the type of offense and a brief sketch of the prior offenses was elicited at trial. The evidence was not of such a nature that the court's limiting instruction to disregard the evidence for any but its proffered purpose would have been ineffective, and a limiting instruction was included in the charge.

Appellant also complains in his second point of error that the Attempted Murder charge was a deferred conviction and as such could not be shown at trial, and in his third point of error that his misdemeanor conviction for Reckless Conduct could not be shown because it is not a crime of moral turpitude.

On cross-examination, appellant testified, "I was being charged with two counts of attempted murder." The appellant also testified that appellant was never tried on those charges, and got probation for an attempted murder, which he was currently serving, and a misdemeanor conviction for Reckless Conduct.

Rule 404(b) provides that "evidence of other crimes, wrongs, or acts" is admissible for other purposes than to show the character of a person in order to show that he acted in conformity therewith. Tex.R.Crim. Evid. 404(b). Here, as previously discussed, the evidence that appellant had been charged with two attempted murders was admissible to show his intent and the absence of accident. Unlike Rule 609, Rule 404(b) does not require a conviction as a prerequisite to admissibility of the evidence.

I find no abuse of discretion by the trial court in admitting the extraneous alleged attempted murder evidence.

---

1. The instant offense and the prior offenses were similar in intent, and probative on that issue, despite differences in the fact situations. *See*   *Ransom v. State,* 503 S.W.2d 810 (Tex.Crim.App. 1974).