11th Court of Appeals








11th Court
of Appeals

Eastland,
Texas

Opinion

 

Freeman Russell

Appellant

Vs.                   No.
11-01-00113-CR B Appeal from Dallas County

State of Texas

Appellee

 

 

The jury
convicted appellant of aggravated assault, found the enhancement paragraphs to
be true, and assessed punishment at 25 years confinement.  We affirm.








In his
first and second issues on appeal, appellant argues that the evidence is
legally and factually insufficient to support his conviction.  Appellant specifically argues that the
evidence is legally and factually insufficient to support his conviction
because the State failed to disprove that he was acting in self-defense.  The State has the burden of persuasion in
disproving evidence of self-defense. 
Saxton v. State, 804 S.W.2d 910, 913 (Tex.Cr.App.1991).  The State is not required to affirmatively
produce evidence which refutes the self-defense claim; rather, the State has the
burden to prove its case beyond a reasonable doubt.  Saxton v. State, supra. 
In resolving the legal sufficiency of the evidence issue, we determine
whether, after viewing all the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt and also could have found against
appellant on the self‑defense issue beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979);
Saxton v. State, supra .  Self-defense
is subject to a factual sufficiency challenge and review under the Clewis[1]
standard.  Shaw v. State, 995 S.W.2d
867, 868 (Tex.App. - Waco 1999, no pet=n).  In our review for factual
sufficiency of the evidence, we consider all the evidence in the record related
to the contested issue.  Shaw v. State,
supra.  We reverse the conviction only
if the jury=s rejection of the defendant=s evidence of self-defense is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust.  Clewis v. State, supra; Shaw v. State,
supra.  Self-defense is an issue of fact
to be determined by the jury.  Saxton v.
State, supra.  A jury verdict of guilty
is an implicit finding rejecting the defendant=s self-defense theory.  Saxton
v. State, supra.

Nicole
Lashunn Whitman, the victim, testified that, at the time of the offense,
appellant was her boyfriend and that she had known appellant for eight or nine
months.  On March 29, 2000, the victim was
volunteering at a hospital, and appellant called her there numerous times.  Appellant and the victim agreed to meet
later at the victim=s
apartment. The victim stated that she got home around 10:45 p.m. and that
appellant was not there.  The victim Apaged@ appellant upon arriving at her apartment.  The victim then laid down on the couch because she was not
feeling well.  After waiting a while for
appellant, the victim left her apartment. 
The victim testified that she received a call on her  cellular phone from appellant who was
calling the victim from  inside the
victim=s apartment. 
The victim returned to her apartment, and appellant was there.  Appellant had been hiding in her apartment
to see if the victim called any other men. 
The victim stated that appellant was very jealous. 

The victim
testified that she and appellant left her apartment and that, when they
returned, the victim=s
pager Awent off.@  Appellant asked the victim who
was paging her, and the victim responded that it was Anone of [his] business.@ 
Appellant then told the victim, AI=m not going to be your whore a - s n - - - -
r.  You=re not going to play me like this.@  The victim testified that
appellant began arguing with her and became very loud.  Appellant walked toward the victim as the
argument escalated.  The victim stated
that she had never seen appellant that upset and that she was becoming
scared.  The victim saw appellant=s gun sitting on the couch.  The victim testified that appellant Acame and stood over@ her and that she pleaded with him to
leave.  Appellant told the victim, ANo.  I
got to teach you a lesson.@ 

The victim
said that she went into the kitchen and retrieved a steak knife. The victim
testified that, when she returned, appellant was holding the gun in his
hand.   The victim sat down on the couch
with the steak knife at her side.  
Appellant came toward the victim with the gun in his hand, and he
continued to yell at her.  The victim
stood up and told appellant to leave.  
The victim said that she Agot real upset from the curse words he was calling [her] and [she]
swung the knife.@  The
victim then heard the Agunshot
pop.@   








The victim
testified that she had been shot in the stomach and that she fell back on the
couch.  Appellant said that he Adidn=t mean to@ and
that he was Asorry.@  The victim asked appellant to
call 911, but he said that he was going to leave.  The victim pleaded with appellant, and he called 911.  Appellant told the 911 operator that the
victim had been stabbed, and then he hung up. 
Appellant called back and told the operator that the victim had been
shot.  The victim stated that, in order
to persuade appellant to call 911, she agreed to tell the police that a former
boyfriend had shot her and that appellant had found her.  When the police arrived, the victim told
them that ATom Jessup@ had shot her.  The paramedics
arrived and transported the victim to the hospital where she underwent surgery
to repair damage to her colon and intestines from the gunshot. 

Officer
Dennis Johnson with the Irving Police Department testified that he was
dispatched to the scene about 1:00 a.m. 
Officer Johnson and Officer Gilmore approached the apartment and could
hear a woman screaming for help.  The
officers knocked on the door with a flashlight.  They were going to  Akick the door in@ when appellant answered.  The victim was lying on the couch bleeding
from her stomach.  Officer Gilmore went
to the victim, and Officer Johnson asked appellant some questions. 

Appellant
told Officer Johnson that the victim paged him to come over because she had
been shot.  Appellant said that he was
at another girl=s apartment in the same complex, but he could
not give Officer Johnson an apartment number. 
Appellant did give Officer Johnson a phone number for the girl, and
Officer Johnson received an address from dispatch.  Officer Johnson testified that he thought it was unusual that
appellant said that he drove to the victim=s apartment although appellant was only a couple of buildings away when
he received the page.  Officer Johnson
also testified that he thought it was strange that appellant=s vehicle was backed into a parking space
with an anti-theft device on the steering wheel.








Appellant
presented testimony that the victim had made a previous threat with a steak
knife.  Chamiere Jackson testified that
she was at her sister=s
apartment when the victim came in and began hitting her and pulling her
hair.  The victim told Jackson that no
one else was going to be involved with the victim=s boyfriend at that time, Gabriel Gardner.  Jackson said that the victim stopped hitting her and then went in
the kitchen and got a steak knife. 
Jackson went in the bathroom and locked the door.  Jackson stated that the victim scratched on
the door and told Jackson that she would Agut [her] like a fish.@  The victim eventually left the
apartment. 

The
following day, the victim returned to the apartment and demanded that Gardner
come outside.  The victim and Gardner
began arguing, and the victim  pulled
out a knife and said that she would Akill all of [them].@  The victim went toward Jackson
with the knife, and Jackson=s sister threw a pan of hot grease on the victim.  When security arrived, the victim said that
she had been attacked by the others at the apartment.  The record shows that Jackson=s sister, Gardner, and Gardner=s brother were charged with assaulting the victim.  Appellant also presented testimony that the
Dallas County District Attorney=s Office dismissed the charges against Gardner=s brother because of problems with the victim=s credibility. 

Appellant
contends that he acted in self-defense because the victim swung the steak knife
at him.  A person is justified in using
force against another Awhen
and to the degree he reasonably believes the force is immediately necessary to
protect himself against the other=s use or attempted use of unlawful force.@  TEX. PENAL CODE ANN. ' 9.31(a) (Vernon Supp. 2002).  A person is justified in using deadly
force:  (1) if he would be justified in
using force under Section 9.31; (2) if a reasonable person in the actor=s situation would not have retreated; and (3)
when and to the degree necessary he reasonably believes deadly force is
necessary to protect himself against the other=s use or attempted use of unlawful force.  TEX. PENAL CODE ANN. ' 9.32(a) (Vernon Supp. 2002).








The record
shows that appellant began arguing with the victim after she received a
page.  Appellant cursed at the victim
and came and stood over her.  The victim
pleaded with appellant to leave, but appellant told the victim he needed to Ateach [her] a lesson.@   
The jury heard evidence that  appellant
came toward the victim with a gun in his hand and cursed at her.  The victim then swung the knife at
appellant, and he shot her.  The jury is
the sole judge of the credibility of the witnesses and the weight to be given
their testimony.  TEX. CODE CRIM. PRO.
ANN. arts. 36.13 & 38.04 (Vernon 1979 and 1981); Wesbrook v. State, 29
S.W.3d 103 (Tex.Cr.App. 2000), cert. den=d, 532 U.S. 944 (2001).  After
viewing all the evidence in the light most favorable to the prosecution, we
find that a rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt and also could have found against appellant
on the self‑defense issue beyond a reasonable doubt.  Viewing all of the evidence, we do not find
that the jury=s verdict of guilty and its rejection of
appellant=s claim of self-defense are so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust.  Appellant=s first and second issues on appeal are overruled.

In his
third issue on appeal, appellant argues that the trial court erred in admitting
evidence  of extraneous offenses.  On rebuttal, the State presented evidence
from appellant=s former girlfriend that  appellant sexually assaulted her after they
were no longer dating.   The State also
introduced evidence that appellant had a 1991 conviction for assaulting a
teacher. 

 Generally, a defendant's prior crimes or bad
acts are inadmissible to prove that he has a bad character or a propensity to
commit the offense charged.    
TEX.R.EVID. 404(b);  Montgomery
v. State, 810 S.W.2d 372, 386 (Tex.Cr.App.1991). Such evidence, however, may be
admissible for other purposes, such as proof of motive, intent, plan,
knowledge, or lack of mistake or accident. 
Rule 404(b);  Montgomery v.
State, supra at 387.  An extraneous
offense may be used to rebut a defensive theory, such as self‑defense,
even though this purpose is not mentioned in Rule 404(b). Halliburton v. State,
528 S.W.2d 216, 219 (Tex.Cr.App.1975); Robinson v. State, 844 S.W.2d 925
(Tex.App. ‑ Houston [1st  Dist.]
1992, no pet=n).  
When the accused claims self‑defense or accident, the State, in
order to show the accused's intent, may show other violent acts where the
accused was an aggressor.   Halliburton
v. State, supra at 218; Booker v. State, 929 S.W.2d 57, 63 (Tex.App. - Beaumont
1996, pet=n ref=d); Robinson v. State, supra. 
Both the teacher assault and the prior sexual assault were admissible to
show intent in the present case and to rebut appellant=s theory of self-defense.  The trial court did not abuse its discretion
in admitting the prior bad acts by appellant.          Appellant also
claims that the prior sexual assault should have been excluded pursuant to
TEX.R.EVID. 403 because the probative value was outweighed by the danger of
unfair prejudice.  We must uphold the
trial court=s decision on admitting the evidence absent
an abuse of discretion.  Montgomery v.
State, supra.   There is a presumption
that relevant evidence is more probative than prejudicial.  Santellan v. State, 939 S.W.2d 155 (Tex.Cr.App.1997).  Appellant has not shown that the trial court
abused its discretion in admitting the evidence of appellant=s prior sexual assault over his objection
that the probative value was substantially outweighed by the danger of unfair
prejudice.  Appellant=s third issue on appeal is overruled.

 








The judgment of the trial
court is affirmed. 

 

TERRY McCALL

JUSTICE

 

October 10, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J.,
and

Wright, J., and McCall, J.











[1]Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).