NUMBER 13-02-348-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG  

 

LUIS JAVIER LOYOLA,                                                                  Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                 Appellee.

 

On appeal from the 138th District
Court of Cameron County, Texas.

 

                                MEMORANDUM
OPINION

 

         Before
Chief Justice Valdez and Justices Hinojosa and Yañez

                            Memorandum
Opinion by Justice Yañez

 








A jury convicted appellant, Luis Javier Loyola, of
aggravated sexual assault of a child[1]
and assessed his punishment at seven years= imprisonment. 
In three issues, appellant challenges the legal and factual sufficiency
of the evidence supporting his conviction and the trial court=s denial of his motion to suppress his two written
statements.  We affirm.

As this is a memorandum opinion and the parties are
familiar with the facts, we will not recite them here except as necessary to
advise the parties of the Court=s decision and the basic reasons for it.[2]  The record contains the trial court=s certification that this Ais not a plea-bargain case, and the defendant has
the right of appeal.@[3]

                                                                  Background  

Appellant was convicted of aggravated sexual assault
of his eight-year-old step-daughter, G.G. 
The victim, nine years old by the time of trial, testified at
trial.  

 Standards of Review and
Applicable Law

In a legal sufficiency review, we view all of the
evidence in the light most favorable to the verdict and then determine whether
a rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.[4]  This standard gives Afull play to the responsibility of the trier of fact
fairly to resolve conflicts in the testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts.@[5] 








We measure the legal sufficiency of the evidence
against the elements of the offense as defined by a hypothetically correct jury
charge for the case.[6]  ASuch a charge would be one that accurately sets out
the law, is authorized by the indictment, does not unnecessarily increase the
State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the
defendant was tried.@[7]

The jury, as the trier of fact, may use common sense
and apply common knowledge, observation, and experience gained in ordinary
affairs when giving effect to the inferences that may be reasonably drawn from
the evidence.[8]  As fact finder, the jury is the exclusive
judge of the credibility of witnesses and the weight to be afforded their
testimony.[9]  The jury is free to accept one version of the
facts, reject another, or reject all or any of a witness's testimony.[10]








In a factual sufficiency review, we view all of the
evidence in a neutral light, and we will set the verdict aside only if the
evidence is so weak that the verdict is clearly wrong and manifestly unjust, or
the contrary evidence is so strong that the standard of proof beyond a
reasonable doubt could not have been met.[11]  We are not bound to view the evidence in the
light most favorable to the prosecution, and may consider the testimony of all
the witnesses.[12]  Disagreeing with the fact finder's
determination is appropriate only when the record clearly indicates that such a
step is necessary to arrest the occurrence of a manifest injustice; otherwise,
due deference must be accorded the fact finder's determinations, particularly
those concerning the weight and credibility of the evidence.[13]

A hypothetically correct jury charge would ask the
jury if appellant (1) on or about the alleged date (2) intentionally or
knowingly (3) caused his sexual organ to contact the sexual organ of (4) a
child younger than fourteen years of age and not married to appellant.[14]


The testimony of a child victim alone is sufficient
to support a conviction for aggravated sexual assault.[15]  A conviction of aggravated sexual assault Ais supportable on the uncorroborated testimony of
the victim of the sexual offense if the victim informed any person, other than
the defendant, of the alleged offense.@[16] 








The unsophisticated language of a child is
sufficient to support a conviction as long as the child victim has sufficiently
communicated to the trier of fact that the offensive sexual touching occurred
to a part of the body within the definition of section 21.01 of the penal code.[17]  The testimony of a child victim of sexual abuse
is given wide latitude by the courts and the description of the sexual abuse
need not be precise.[18]  Given this latitude, no requirement exists
that physical, medical, or other evidence be proffered to corroborate the
victim's testimony.[19]

                                                     Legal
Sufficiency Analysis 

In his first issue, appellant complains that the
evidence is legally insufficient to support his conviction.  Specifically, appellant contends the evidence
is insufficient to prove that he caused the victim=s sexual organ to contact his sexual organ.

As noted above, the testimony of a child victim
alone is sufficient to support a conviction for aggravated sexual assault.[20]  Here, the victim testified that appellant=s Amiddle part@[21] touched her Amiddle part@ and that appellant tried to put his Amiddle part@ into her Amiddle part.@  Appellant
notes that on cross-examination, the victim testified that she told her mother
the incident had not happened.  The
victim also testified, however, that the morning after the incident, she told
her mother that her step-father had chased after her and put his hand over her
mouth.  She told her mother that nothing
else had happened because she was scared of appellant.  The Aoutcry@ witness, a next-door neighbor who regularly babysat
the victim and her siblings, testified that the victim told her about the
incident approximately two weeks after it occurred.








Viewing the evidence in the light most favorable to
the verdict, we conclude that any rational trier of fact could have found
beyond a reasonable doubt all of the essential elements of the offense of
aggravated sexual assault of a child. 
Accordingly, we hold the evidence is legally sufficient to support the
jury=s finding that appellant committed  aggravated sexual assault of a child as
charged in Count II of the indictment. 
We overrule appellant=s first issue. 

                                                   Factual
Sufficiency Analysis 

By his second issue, appellant contends the evidence
is factually insufficient to support his conviction.  Specifically, appellant emphasizes that (1)
the victim felt no pain after the alleged assault and (2) did not complain of
the alleged assault for approximately fifteen days; (3) there were no
witnesses; (4) the victim=s mother awoke about the same time the assault
allegedly occurred and did not see appellant in the victim=s room; (5) upon being questioned by her mother,
appellant denied that any touching or contact occurred; (6) the medical records
do not support evidence of penetration; and (7) appellant denied that his
sexual organ contacted the victim=s sexual organ. 


We again note that the testimony of a child victim
alone is sufficient to support a conviction for aggravated sexual assault.[22]  Viewing all the evidence in a neutral light,
we conclude the evidence is not so weak as to be clearly wrong and manifestly
unjust and the verdict is not against the great weight of the evidence.  Accordingly, we hold the evidence is
factually sufficient to support the jury=s finding that appellant committed aggravated sexual
assault of a child, as charged in Count II of the indictment. 

                                                            Motion
to Suppress








A trial court's ruling on a motion to suppress is
generally reviewed for abuse of discretion.[23]  In a suppression hearing, the trial judge is
the sole trier of fact and judge of the credibility of
the witnesses and the weight to be given to their testimony.[24]  In reviewing a trial court's ruling on a
motion to suppress, we afford almost total deference to the trial court's
determination of the historical facts that the record supports, especially when
the trial court's findings turn on evaluating a witness's credibility and
demeanor.[25]  We afford the same amount of deference to the
trial court's ruling on Aapplication of law to fact questions,@ also known as Amixed questions of law and fact,@ if resolving those ultimate questions turns on
evaluating credibility and demeanor.[26]  However, we review de novo questions
of law and Amixed questions of law and fact@ that do not turn on an evaluation of credibility
and demeanor.[27]









Because the determination of whether a statement is
voluntary is a mixed question of law and fact which turns on the credibility of
the witnesses, the trial court's determination should be granted almost total
deference on appeal.[28]  We uphold a trial court=s ruling on a suppression motion if it is reasonably
supported by the record and is correct on any theory of law applicable to the
case.[29]

                                                 Analysis
of Motion to Suppress

By his third issue, appellant contends the trial
court erred in denying his motion to suppress his written statements.[30]  Specifically, appellant contends his
statements were not made knowingly and voluntarily and that he was not advised
of the right to consult with an attorney. 
Appellant testified at the suppression hearing that he requested an
attorney but was told he did not need one, and that he was not advised of his
Constitutional rights.  He further
testified that the police officers led him through the questioning and told him
that  it would be to his benefit to give
a statement.  Similarly, during the
guilt/innocence phase of trial, appellant testified that he requested an
attorney but was told he did not need one, and that he signed the statements
because he Atrusted@ the police and was told it would benefit him.  Appellant testified that when he initialed
the statements, he A[didn=t] understand any of that.@  He testified
that he did not commit the alleged acts, but he signed the statements based on
representations that it would help him in court. 








The record shows that at the suppression hearing,
Alfredo Alvear, a Harlingen police officer, testified that shortly after
appellant turned himself in on January 3, 2002, appellant was read his rights
in Spanish and after affirming that he understood his rights, signed a written
waiver of his rights.  Detective Miriam
Anderson, a Harlingen police officer, also testified that she met with
appellant the following day, January 4, 2002, and appellant again waived his
rights after they were read to him in Spanish. 
After appellant waived his rights, Detective Anderson took appellant=s voluntary statement.[31]  Anderson testified that she never told
appellant it would be to his benefit to make a statement.  She also testified that later in the day,
after executing a second waiver of his rights, appellant provided a second
voluntary statement.

After hearing argument, the trial court denied
appellant=s motion to suppress and admitted both of appellant=s statements (State=s
Exhibits 4 and 6) into evidence.[32]  However, the
trial court failed to make written findings of fact and conclusions of law as
to whether appellant=s statements were made voluntarily as required by
section six of article 38.22 of the code of criminal procedure.[33]  On August 31, 2005, this Court abated the
appeal and remanded for the trial court to enter such findings of fact and
conclusions of law.  On September 26,
2005, the trial court filed its written findings and conclusions regarding the
voluntariness of appellant=s written statements.  The trial court found that appellant
voluntarily and knowingly waived his Miranda rights,[34]
that there was no duress, coercion, or promises to elicit appellant=s statements, and that both of appellant=s  written
statements were freely and voluntarily made.        








As noted, the trial court is the sole judge of the
weight and credibility of the witnesses and may believe or disbelieve all or
any part of any witness=s testimony.[35]  Appellant=s
contention regarding the voluntariness of his statements depends upon facts
that were resolved by the trial court against appellant=s position.[36]  Although appellant testified that his
statements were not voluntary, the trial court could have determined that his
testimony was not credible.[37]  Giving almost total deference to the trial
court=s resolution of historical facts, we conclude the
trial court reasonably determined that appellant=s
statements were made voluntarily. 
Accordingly, we hold that the statements were properly admitted into
evidence.[38]  We overrule appellant=s third issue.

We AFFIRM the judgment of the trial court.            

 

 

_______________________

LINDA REYNA YAÑEZ,

Justice

 

 

Do not publish.                                              

Tex. R. App. P.  47.2(b)

 

Memorandum Opinion delivered and 

filed this the 3rd day of November, 2005.

 

 











[1] See Tex. Pen. Code Ann. ' 22.021 (a)(1)(B)(iii), (a)(2)(B) (Vernon Supp.
2004-05).  Count II of the  indictment alleged that on or about November
20, 2001, appellant Aintentionally or knowingly cause[d]
the sexual organ of G.G., a child who was then and there younger than 14 years
of age and not the spouse of the defendant, to contact the sexual organ of the
defendant.@ 
The jury found appellant guilty of Count II as charged in the
indictment.  The jury found appellant not
guilty of Count I, which alleged digital penetration of the victim=s sexual organ.  





[2] Tex.
R. App. P. 47.4.





[3] 
See Tex. R. App. P. 25.2(a)(2).





[4] Escamilla v. State, 143
S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Jackson v. Virginia, 443
U.S. 307, 319 (1979)). 





[5] Jackson, 443 U.S. at 319.





[6] See Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131
(Tex. App.BCorpus Christi 2002, pet. ref'd).





[7] Malik, 953 S.W.2d at 240. 





[8] Booker v. State, 929 S.W.2d
57, 60 (Tex. App.BBeaumont 1996, pet. ref'd). 





[9] Tex.
Code Crim. Proc. Ann. art. 38.04 (Vernon 1981); Chambers v. State,
805 S.W.2d 459, 461 (Tex. Crim. App. 1991). 





[10] Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim.
App. 1981). 





[11] Escamilla, 143 S.W.3d at
817 (citing Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App.
2004)).





[12] Johnson v. State, 23
S.W.3d 1, 10-12 (Tex. Crim. App. 2000). 





[13] Id.  





[14] See Tex. Pen. Code Ann. ' 22.021 (a)(1)(B)(iii), (a)(2)(B) (Vernon Supp. 2004-05).





[15] Perez v. State, 113 S.W.3d 819, 838 (Tex. App.BAustin 2003, pet. ref'd);Villanueva
v. State, 703  S.W.2d 244, 245 (Tex.
App.BCorpus Christi 1985, no writ).     





[16] Tex.
Code Crim. Proc. Ann. art. 38.07(a) (Vernon 2005). 





[17] Clark v. State, 558 S.W.2d
887, 889 (Tex. Crim. App. 1977); see Gallegos v. State, 918 S.W.2d 50,
54 (Tex. App.BCorpus Christi 1996, pet. ref'd). 





[18] Villalon v. State, 791
S.W.2d 130, 134 (Tex. Crim. App. 1990). 





[19] See Garcia v. State, 563
S.W.2d 925, 928 (Tex. Crim. App. 1978).





[20]  Perez, 113 S.W.3d at 838. 





[21] At trial, the victim identified
the Amiddle part@ on atomically correct pictures of
a boy and girl as their sexual organs.





[22] Perez, 113 S.W.3d at 838. 





[23] See Ford v. State, 26 S.W.3d 669, 672 (Tex. App.BCorpus Christi 2000, no pet.)
(citing Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999)).





[24] State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 





[25] State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 





[26] Ross, 32 S.W.3d at 856; Guzman,
955 S.W.2d. at 89. 





[27] Ross, 32 S.W.3d at 856; Guzman, 955 S.W.2d. at 89. 





[28] Garcia v. State, 15
S.W.3d 533, 535 (Tex. Crim. App. 2000). 





[29] Villarreal v. State, 935
S.W.2d 134, 138 (Tex. Crim. App. 1996).





[30] The State introduced State=s Exhibits 4 and 6, two written
statements by appellant.  





[31] Appellant=s first statement, State=s Exhibit 4,  was admitted at trial.





[32] At the conclusion of the
suppression hearing, the trial court stated, AI do find that the suppression,
that the confession was the [sic] freely and voluntarily made pursuant to 38.22
or 38.23 of the Code of Criminal Procedure, and it is admissible for the jury=s purposes.  No coercion, everything was freely and
voluntarily done.@ 





[33] Tex.
Code Crim. Proc. Ann. art. 38.22 ' 6 (Vernon 2005).





[34] See Miranda v. Arizona, 384
U.S. 436, 444 (1966).





[35] Miniel v. State, 831 S.W.2d
310, 315 (Tex. Crim. App. 1992); Lamb v. State, 680 S.W.2d 11, 15 (Tex.
Crim. App. 1984); Denoso v. State, 156 S.W.3d 166, 175 (Tex. App.BCorpus Christi 2005, pet. ref=d). 





[36] See Denoso, 156 S.W.3d at
176. 





[37] See id.  





[38] See id.