# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00684-CR

**Jeffrey Walker Kindred, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT NO. 69787, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## MEMORANDUM OPINION

A jury convicted appellant Jeffrey Walker Kindred of the offense of aggravated assault of a peace officer with a deadly weapon. Punishment was assessed at forty years' imprisonment. In two related issues on appeal, Kindred asserts that the district court abused its discretion in admitting testimony by a police officer that Kindred contends was (1) hearsay and (2) not relevant. We will affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that on the afternoon of April 15, 2012, Officer Derek Rose of the Temple Police Department responded to a dispatch reporting that a possible suspect in a robbery from several weeks earlier had been identified buying gas at a convenience store. According to Rose, the store clerk who had identified the suspect reported the suspect's vehicle and license-plate number to the police. Rose then entered the vehicle information into the police database and ascertained the location of the apartment complex where the suspect likely resided. Rose testified

that he traveled to that location and, once there, identified the suspect vehicle exiting the complex. Rose began following the vehicle and eventually conducted a traffic stop. After stopping the vehicle, which contained both a driver and passenger, Rose began conversing with the driver, who was later identified as Kindred.

Shortly thereafter, Officer James Carr arrived at the scene to assist Rose. Carr testified that Rose asked him to interview Kindred outside the vehicle while Rose interviewed the passenger. Carr explained that he escorted Kindred to a nearby location and began interviewing him. At some point during the conversation, Carr decided to place Kindred in handcuffs. However, before Carr was able to do so, Kindred fled. According to Carr, Kindred jumped over a rail on the side of the road, rolled down a nearby hill, and continued running. Carr chased after Kindred on foot, and eventually caught up with him. Carr testified that when he made physical contact with Kindred, Kindred turned around and "threw a punch" at him, "right in [Carr's] face." Carr punched Kindred in return, in an attempt to gain control of him. The tactic did not work. Instead, Carr explained, Kindred "dove for [Carr's] gun" and the two men began wrestling for control of the firearm, with Kindred eventually obtaining control of the weapon and pointing it at Carr's head, "ready to shoot." As Carr struggled to regain control of the weapon, Kindred pulled the trigger. Carr testified that the bullet did not hit him, but the shell casing did. As the struggle continued, Kindred repeatedly pulled the trigger in an attempt to shoot Carr. He was unable to do so, according to the ballistic evidence presented at trial, because the gun had jammed after the first shot was fired. Carr testified that he soon became exhausted and was quickly losing his ability to fight Kindred. Fortunately, Carr explained, Rose and other officers arrived at around that time and assisted Carr in gaining control of Kindred and placing him under arrest.

Based on the above and other evidence, the jury convicted Kindred of the offense of aggravated assault on a public servant with a deadly weapon and assessed punishment as noted above. The district court sentenced Kindred in accordance with the jury's verdict. This appeal followed.

**STANDARD OF REVIEW**

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.[1] The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, without reference to any guiding rules or principles.[2] A trial court abuses its discretion only when its decision "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree."[3] Moreover, we must sustain a trial court's ruling admitting or excluding evidence on any theory of law applicable to the case.[4]

**ANALYSIS**

During Officer Rose's testimony, the following exchange occurred:

Q.      And so at some point, did you get a dispatch about a particular vehicle?

A.      Yes, sir, I did.

Q.      And what was that?

---

[1] *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008).

[2] *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

[3] *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

[4] *See Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990).

A.                          It was a call to a little convenience store at MLK and Booth
                            that there was a black male pumping gas—

[Defense counsel]:          Your Honor, this is going to be a hearsay statement.

[Prosecutor]:               Your Honor, we're not offering this for the truth of the matter
                            asserted, but merely to understand why off—Lieutenant Rose
                            made the stop in the first place.  It goes to the probable cause
                            of the stop.

[The Court]:                Overruled.

. . . .

Q.                          What was that [dispatch]?

A.                          It was a call that there was a black male pumping gas.  And
                            the clerk recognized him, and it was called in that he had
                            committed a robbery there several weeks earlier.

Q.                          Okay.  And other than that, did you have any information
                            about the call?

A.                          Yes, sir.  It was a—they put it out that it was a gold car. . . .
                            And they said it was a Nissan Altima.  And when I got the
                            return that says it was—it lived at the apartments just up from
                            there off of MLK.

No further objections to the testimony were raised.  In his first issue on appeal, Kindred asserts that

the above testimony was inadmissible hearsay.[5]  In his second issue on appeal, Kindred additionally

asserts that the testimony was not relevant to any issue in the case.

        We first address Kindred's contention that the testimony was inadmissible hearsay.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing,

---

[5] Specifically, Kindred contends that the testimony was "double hearsay," or hearsay within
hearsay, because the officer was recounting statements by the dispatcher regarding statements by the
store clerk.  *See* Tex. R. Evid. 805.

offered in evidence to prove the truth of the matter asserted.[6]  "It is well established that an extra-judicial statement or writing offered for the purpose of showing what was said rather than for the truth of the matter stated therein does not constitute hearsay."[7]  Here, it would not be outside the zone of reasonable disagreement for the district court to find that the statements made by the clerk to the dispatcher and, subsequently, by the dispatcher to the officer, were not offered to prove the truth of the matter asserted, i.e., that Kindred had committed a robbery at the store several weeks earlier.  Instead, the district court could have reasonably found that the statements were being offered to provide the jury with relevant background information concerning the incident and the circumstances surrounding the assault, including why Officer Rose had stopped Kindred and why Officer Carr had arrived on the scene to assist Rose.[8]  On this record, we cannot conclude that the district court abused its discretion in overruling Kindred's hearsay objection to the evidence.

Kindred next contends that the testimony was not relevant to any issue in the case. Specifically, Kindred asserts that the prosecutor's proferred reason for eliciting the testimony, to establish "probable cause [for] the [traffic] stop," was never an issue in the case or contested by the defense, and thus the testimony was not relevant for that reason.[9]  However, as the State observes,

_____

[6]  Tex. R. Evid. 801(d).

[7]  *Porter v. State*, 623 S.W.2d 374, 385 (Tex. Crim. App. 1981).

[8]  *See id*. at 385 (communication between officers and dispatch not hearsay when offered to show "the circumstances surrounding and leading to" the charged offense and to show that officer was "acting in the lawful discharge of an official duty" during incident); *see also Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (explaining that State may offer out-of-court statements without violating hearsay rule if statements are offered to explain why defendant became subject of investigation).

[9]  *See Christopher v. State*, 833 S.W.2d 526, 529 (Tex. Crim. App. 1992) (holding that even though certain evidence "was relevant to the determination of probable cause to stop appellant, that issue was not contested before the jury," and therefore, the evidence was not "admissible at trial on grounds of relevancy to any issue of probable cause").

Kindred did not object to the testimony at trial on this ground. His objection was limited to hearsay. Accordingly, this complaint is being raised for the first time on appeal and has not been preserved for our review.[10]

Moreover, even if we were to assume that error was preserved on the basis of relevance and further assume that the testimony should not have been admitted either for that reason or because it was inadmissible hearsay, we could not conclude on this record that Kindred was harmed by its admission. A violation of the evidentiary rules that results in the erroneous admission of evidence is non-constitutional error.[11] Non-constitutional error that does not affect a defendant's substantial rights must be disregarded.[12] Substantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect.[13] "In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case."[14] We may also consider the jury

---

[10] *See* Tex. R. App. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) ("[T]he point of error on appeal must comport with the objection made at trial."); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986) ("[I]f an objection made in the trial court differs from the complaint made on appeal, a defendant has not preserved any error for review.").

[11] *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

[12] Tex. R. App. P. 44.2(b).

[13] *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

[14] *Id*. at 355-56.

instructions, the State's theory and any defensive theories, closing arguments, voir dire, if applicable, whether the State emphasized the error, and whether there is "overwhelming evidence of guilt."[15]

Here, Kindred's identity as a possible robbery suspect was not emphasized by the State, either during its case-in-chief or in its closing arguments. Instead, the State's emphasis throughout trial was on the charged offense. The vast majority of evidence presented at trial related to the assault itself, including extensive testimony from Officer Carr explaining the circumstances surrounding his struggle with Kindred for control of Carr's firearm and describing in detail Kindred's repeated attempts to shoot Carr once he had gained control of the weapon, and ballistics evidence that tended to corroborate Carr's account of the assault. On this record, we have fair assurance that the challenged testimony, brief and limited as it was, did not influence the jury or had but a slight effect.

We overrule Kindred's first and second issues.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: July 25, 2014

Do Not Publish

---

[15] *Id*. at 355-57.